**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ZACHARY ROBERT BABCOCK,

    Defendant - Appellant.

No. 20-4003

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. Nos. 2:18-CV-00819-TS & 2:17-CR-00124-TS-1)**
_____

Benjamin C. McMurray, Assistant Federal Public Defender (Scott Keith Wilson, Federal Public Defender, with him on the briefs), Salt Lake City, Utah, for the Defendant-Appellant.

Elizabethanne Stevens, Assistant United States Attorney (John W. Huber, United States Attorney, and Ryan D. Tenney, Assistant United States Attorney, with her on the briefs), Salt Lake City, Utah, for the Plaintiff-Appellee.

_____

Before **HARTZ**, **KELLY**, and **MURPHY**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Defendant Zachary Babcock appeals the denial of his motion under 28 U.S.C. § 2255 to vacate and correct his sentence on the ground of ineffective assistance of counsel. He complains that his counsel failed to object to a sentencing-guidelines

enhancement under USSG § 2K2.1(a)(4)(A) based on prior convictions of a "controlled substance offense" as defined by USSG § 4B1.2(b). The convictions were under a Utah statute that prohibits offers to sell controlled substances. This court has held that statutes of two States that prohibit a mere offer to sell a controlled substance—without requiring proof of intent to actually distribute or complete a sale—do not satisfy the definition of *controlled substance offense*. *See United States v. Madkins*, 866 F.3d 1136, 1145 (10th Cir. 2017) (Kansas statute); *United States v. McKibbon*, 878 F.3d 967, 973–74 (10th Cir. 2017) (Colorado statute). But guideline commentary states that an attempt to commit a controlled-substance offense is itself a controlled-substance offense, *see* USSG § 4B1.2 cmt. n.1, and our opinions have left open the possibility that an offer-to-sell statute could satisfy the conditions necessary to be considered an attempt-to-sell statute.

Defendant contends that his trial counsel should have argued at sentencing (1) that an offer to sell under the Utah statute is not necessarily an attempt to commit a controlled-substance offense and (2) that the guideline commentary stating that an attempt to commit a controlled-substance offense is also a controlled-substance offense improperly expanded the text of the guideline. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm the judgment below. Counsel's failure to make those two arguments did not constitute deficient performance because the first argument lacks merit and the second would have been a stretch at the time.

## I.    BACKGROUND

Defendant was charged with possession of methamphetamine with intent to distribute, *see* 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm and ammunition, *see* 18 U.S.C. § 922(g)(1). In July 2017 he pleaded guilty to the firearm charge in the United States District Court for the District of Utah in exchange for dismissal of the drug charge. He also waived his right to appeal or collaterally challenge his sentence, except on the ground of ineffective assistance of counsel.

Defendant's presentence investigation report (PSR) calculated Defendant's base offense level as 20 by applying a guideline that provides an increased offense level for those who have previously been convicted of a felony "controlled substance offense." USSG § 2K2.1(a)(4)(A). After an additional enhancement and two reductions, Defendant's total offense level was 21, producing a guideline range of 70–87 months' incarceration, and Defendant was sentenced to 70 months in prison and three years supervised release on October 3, 2017.

> The guidelines define *controlled-substance offense* to mean:
>
> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b). An accompanying application note states that the term *controlled substance offense* "include[s] the offenses of aiding and abetting, conspiring, and *attempting* to commit such [an] offense[]." USSG § 4B1.2 cmt. n.1 (emphasis added).

3

To determine whether a prior conviction qualifies as a controlled-substance offense, we apply what is called the categorical approach, which requires us to "line up the elements of the prior conviction alongside the elements of the [guidelines] predicate offense" to make sure that the guidelines definition of the predicate offense does not have any elements absent from the offense of the prior conviction. *Madkins*, 866 F.3d at 1145 (brackets and internal quotation marks omitted). That is, a prior conviction under a statute "will qualify as a controlled substance offense only if [the violated statute] criminalizes no more conduct than the offenses listed in the Guidelines." *United States v. Faulkner*, 950 F.3d 670, 674 (10th Cir. 2019).[1] Our analysis focuses on "the elements of the statute of conviction and not on the particular facts underlying that conviction." *Id.* (brackets and internal quotation marks omitted).

Defendant's prior convictions were under Utah Code § 58-37-8(1)(a)(ii), which makes it unlawful to "knowingly and intentionally . . . distribute a controlled or counterfeit substance, or to agree, consent, *offer*, or arrange *to distribute* a controlled or counterfeit substance." (emphasis added). The government has argued that the state statute requires all the elements of an attempt to commit a controlled-substance offense, so the enhancement under the guidelines was proper.

---

[1] *Madkins* and *Faulkner* predated *Shular v. United States*, 140 S.Ct. 779 (2020), which appears to employ a different approach in determining whether a state offense is a controlled-substances offense under the Armed Career Criminal Act, 18 U.S.C § 924(e). But we do not consider *Shular* here because neither party argued the point and we doubt that our ultimate conclusions would be affected.

Defendant, however, argues that the government's argument fails on two counts. First, he argues that for the state offense to constitute an *attempt* to commit a controlled-substance offense, the offender must make a *bona fide* offer to distribute a controlled substance, and, in his view, the Utah statute does not require that the offer be bona fide, so the state offense cannot be a predicate offense for application of the guidelines enhancement. Second, Defendant argues that even if the Utah offense is equivalent to an attempt to commit a controlled-substance offense, the Sentencing Commission lacked authority to use its commentary to expand the guidelines definition to include attempts. Defendant raised neither of these arguments until he filed his § 2255 motion.

The district court rejected both of Defendant's arguments and denied a certificate of appealability (COA) to allow Defendant to appeal to this court. *See* 28 U.S.C. § 2253(c)(1)(B) (requiring COA to appeal denial of motion under § 2255). We then granted a COA on these two issues.[2] Our task is to determine whether counsel's failure to raise these arguments at sentencing constituted ineffective assistance of counsel.[3]

---

[2] We also granted a COA on Defendant's argument that the Utah law at issue here did not categorically qualify as a controlled-substance offense because it applied to substances not controlled under federal law. Defendant concedes that this argument has since been resolved to the contrary in *United States v. Jones*, 15 F.4th 1288, 1290 (10th Cir. 2021), which held that the guidelines do not limit controlled substances to only those substances so defined under federal law.

[3] Although Defendant has already served his prison sentence, this case is not moot because he is still on supervised release. If we were to hold that his sentence was unlawful, the district court would need to resentence him, and the term of supervised release could be modified in his favor. *See United States v. Salazar*, 987

## II.    DISCUSSION

### A.    Standard of Review

In a § 2255 appeal, "[w]e review the district court's legal rulings . . . de novo and its findings of fact for clear error." *United States v. Holloway*, 939 F.3d 1088, 1097 (10th Cir. 2019) (internal quotation marks omitted). Because there are no disputed historical facts, our review is de novo. *Cf. id.* (reviewing claim of ineffective assistance of counsel de novo).

---

F.3d 1248, 1252 (10th Cir. 2021) (holding that appeal of sentence was not moot because "the mere *possibility* of a reduced term of supervised release is enough to maintain a live controversy"). As stated recently by the Supreme Court, "[W]e may dismiss the case [as moot] only if it is impossible for a court to grant any effectual relief whatever to [the party seeking relief] assuming it prevails." *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (internal quotation marks omitted). The mootness issue would be different if the challenge were to the execution of his prison sentence (say, he complained that his release date was miscalculated) in a habeas proceeding under 28 U.S.C. § 2241 and he had already been released from confinement, even if he was still on supervised release, where we could not order any relief because we lacked authority to reduce the term of supervised release as "compensation" for serving an excessive time in prison. *See Rhodes v. Judiscak*, 676 F.3d 931, 932 (10th Cir. 2012). (Because *Rhodes* is distinguishable from this case—where we clearly have authority to require resentencing—we need not consider its continuing viability. But we note that the two circuit-court opinions relied on by *Rhodes* have since been rejected by later decisions of the same courts. *See United States v. Epps*, 707 F.3d 337, 344–46 (D.C. Cir. 2013) (rejecting *United States v. Bundy*, 391 Fed. Appx. 886 (D.C. Cir. 2010)); *United States v. Scripps*, 961 F.3d 626, 631 n.3 (3d Cir. 2020) (distinguishing *Burkey v. Marbury*, 556 F.3d 142 (3d Cir. 2009), and stating that its mootness logic "appears to have been superseded by more recent Supreme Court case law, which clarifies that a case is not moot if there is *any* theoretical avenue of relief. *See, e.g.*, [*Mission Product*].").)

### B.    Ineffective Assistance of Counsel

To establish an ineffective-assistance-of-counsel claim, one must show both deficient performance and resultant prejudice to the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We may reject a claim under either prong without reviewing the other. *See id.* at 697.

Deficient performance is representation that falls "below an objective standard of reasonableness." *Id.* at 688. We start with the presumption that "absent a showing to the contrary, . . . an attorney's conduct is objectively reasonable because it could be considered part of a legitimate trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002). But even when, as was apparently true here,[4] "an attorney's ignorance of relevant law and facts precludes a court from characterizing certain actions as strategic . . . , the pertinent question under the first prong of *Strickland* remains whether, after considering all the circumstances of the case, the attorney's representation was objectively unreasonable." *Id.* at 1050–51.

"[C]ounsel's failure to raise or recognize a potential legal argument does not automatically render counsel's performance constitutionally deficient." *United States v. Harms*, 371 F.3d 1208, 1212 (10th Cir. 2004). Rather, we must ask whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In answering this question we must recognize that life is short. Realistically, counsel do not have the time, and therefore

---

[4] In the § 2255 proceeding in district court, trial counsel for Defendant conceded that he had not thought to challenge the enhancement.

are not required, to do everything possible to help their clients. They are not ineffective because they fail to conceive, research, and raise every novel argument that has a chance to prevail. *See New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011) (failure to raise argument that a warrantless entry into defendant's hospital room was a search violating the Fourth Amendment did not constitute deficient performance where there was a split of authority among state courts and the Eighth Circuit had not yet addressed the issue). In particular, if an argument is meritless, it is likely that the failure to raise it was not deficient performance. But in any event, the lack of merit establishes that the defendant was not prejudiced by the failure to argue the point, thereby defeating the ineffective-assistance claim. *See, e.g.*, *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (assuming counsel's performance was deficient but holding that ineffective-assistance claim failed because defendant was not prejudiced by omission of argument that "would have failed on the merits").

Because the merit of the ineffectiveness claim depends on the merits of the arguments not made by trial counsel, we next address the merits of those arguments. We begin by discussing when an offer to distribute constitutes an attempt to distribute. We then turn to the Utah statute and conclude that an offer to distribute under the statute satisfies the requirements for an attempt. After that, we consider whether the guidelines commentary improperly defined a controlled-substance offense to include an attempt to commit a controlled-substance offense. Although there is now some caselaw support for that proposition, we conclude that failure to raise the issue was not deficient performance at the time of Defendant's sentencing.

8

### C.    When Is an Offer to Distribute an Attempt to Distribute?

In two recent cases this court held that statutes proscribing offers to sell did not meet the guidelines definition of a controlled-substance offense because the government had not shown that the statutes required an intent to sell a controlled substance. In *Madkins* (decided two months before Defendant was sentenced), the court considered a Kansas statute that made it unlawful "to sell, offer for sale or have in . . . [one's] possession with intent to sell, deliver, or distribute" a controlled substance. 866 F.3d at 1145 (quoting Kan. Stat. § 65-4161(a) (2001) and § 65-4163(a)(3) (2001)).

We considered whether an offer to sell under the Kansas statute would satisfy the guideline because, under the guideline commentary, an attempt to sell is treated as a controlled-substance offense and an offer to sell could be an attempt to sell. We rejected that possibility because an attempt to commit a crime requires an intent to commit the crime; and such intent was not required to prove an offer to sell under the Kansas statute. *See Madkins*, 866 F.3d at 1147–48. Therefore, the Kansas statute was broader than the guidelines definition of sell or attempt to sell. *See id.* We quote at length our explanation for that conclusion:

> In reaching our holding today, we note that at first glance, it seems as though an offer for sale would fit squarely within the definition in the Guidelines, since the commentary to § 4B1.2 clarifies that a controlled substance offense includes an attempt to commit such an offense. But a closer look reveals that the two are not a categorical match. We have previously explained that in our circuit, "an attempt to commit a crime requires the *intent* to commit the crime and *overt acts* in furtherance of that intent." *See United States v. Taylor*, 413 F.3d 1146, 1155 (10th Cir. 2005) (emphasis added). And because a person can offer a controlled substance

for sale without having the intent to actually complete the sale, a conviction for an offer to sell can be broader than a conviction for an attempt to sell.

For example, as several other circuits have noted, "[a]n offer to sell can be fraudulent, such as when one offers to sell the Brooklyn Bridge. In such a circumstance, the offer to sell is fraudulent in the sense that the person offering the bridge or the drug does not have the *intent* to distribute or sell the item." [*United States v.*] *Savage*, 542 F.3d [959,] 965 [2d Cir. 2008] (citing *United States v. Palacios-Quinonez*, 431 F.3d 471, 476 (5th Cir. 2005))[5]. . . .

Since [an offer] does not necessarily involve the intent to sell or distribute that is required for [an attempt], a conviction for possession with intent to sell a controlled substance—where sale is defined to include an offer—is broader than the conduct criminalized in § 4B1.2(a) and the authoritative commentary.

*Id.*

The one out-of-circuit opinion we cited in support of our intent analysis—

*Savage*—likewise focused on only the element of intent in holding that an offer to

sell under a Connecticut statute did not constitute an attempt to commit a controlled-

substance offense. That court concluded as follows its analysis of why conviction

under the Connecticut statute would not satisfy the guideline:

An offer to sell can be fraudulent, such as when one offers to sell the Brooklyn Bridge. In such a circumstance, the offer to sell is fraudulent in the sense that the person offering the bridge or the drug does not have the *intent* to distribute or sell the item. As we have held, a crime not involving the mental culpability to commit a substantive narcotics offense does not serve as a predicate controlled substance offense under the Guidelines. Thus, the Connecticut statute, by criminalizing a mere offer to sell, criminalizes more conduct than falls within the federal definition of a controlled substance offense.

---

[5] *Palacios-Quinonez* provided the Brooklyn Bridge example, but only to distinguish an offer to sell drugs from a purchase for sale (the state offense at issue in the case) in that an offer to sell does not require the offeror to possess drugs. The court concluded that the offense of purchase of a drug for sale satisfies the elements of possession with intent to distribute (attempt was not at issue). *See* 431 F.3d at 476.

10

*Savage*, 542 F.3d at 965–66 (citations, brackets, and internal quotation marks omitted).

This circuit's next opinion on the subject, *United States v. McKibbon*, 878 F.3d 967 (10th Cir. 2017) (decided two months after Defendant was sentenced), adopted the same reasoning as in *Madkins*, quoting the same passage from that opinion that we quoted above. It considered a Colorado drug law that defined prohibited sales to include "a barter, an exchange, or a gift, or an <u>offer</u> therefor." 878 F.3d at 972 (quoting Colo. Rev. Stat. § 18-18-403(1)). Neither the plain text of the Colorado statute, nor cases interpreting it, had limited or modified the term *offer* to include an intent requirement. *See id.* at 974. A conviction under the Colorado statute thus did not qualify as a controlled-substance offense under the guideline. We do not read *McKibbon* as altering the analysis in *Madkins*. As we later summarized the holdings in *Madkins* and *McKibbon*, "[B]ecause a fraudulent offer lacks the *intent* to sell or distribute that an attempt requires, a conviction for selling or distributing a controlled substance (in any state that defines sale to include all offers) criminalizes a broader swath of conduct than the guidelines' definition of a controlled substance offense." *United States v. Almanza-Vigil*, 912 F.3d 1310, 1320 (10th Cir. 2019) (emphasis added, internal quotation marks omitted). In sum, as we understand *Madkins* and *McKibbon*, we will not hold that a state offer-to-sell offense is a controlled-substance offense under the guidelines unless case law or unambiguous statutory language requires as an element of the offense an intent to sell a controlled substance.

11

Defendant asserts, however, that *McKibbon* required more than an intent element. He argues that we insisted that the offer to sell be a *bona fide* offer to sell, and that an offer is bona fide only if the offeror has the ability to consummate the sale. As he puts it, "[T]his court has explained that a bona fide offer to sell is one in which the 'defendant had both the intent *and ability* to proceed with the sale.'" Aplt. Br. at 14 (quoting *McKibbon*, 878 F.3d at 973) (emphasis in Defendant's brief). Defendant is correct that *McKibbon* states that the offer to sell must be bona fide. But we have no doubt that the panel in *McKibbon* was using the term as it is defined in Black's Law Dictionary 217 (11th ed. 2019): "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine." An offer to sell is bona fide if the offeror intends to sell the product or service offered. The context of our use of the term *bona fide* further supports our interpretation. We used the term in response to the government's argument that the Colorado Supreme Court had never addressed a conviction for an offer to sell that was not a bona fide offer and that the state's highest court would probably require proof of a bona fide offer to sell if the issue ever arose. *See McKibbon*, 878 F.3d at 973–74. In making that argument, the government's brief in *McKibbon* stated: "[T]he Colorado Supreme Court would likely interpret the term 'offer' to mean a bona-fide offer—*i.e.*, one made with the intent to sell drugs." *McKibbon* (16-1493) Aplee. Br. at 13. It would be most unusual and surprising if we had rejected the government's "bona fide" argument, using the same term (bona fide) as that argument, and yet were giving that term an idiosyncratic meaning (a meaning

12

different from the dictionary meaning and the meaning provided in the government

brief) without explicitly saying so.

The definition of *bona fide* relied on by Defendant appears in *McKibbon* solely

in a parenthetical in which the First Circuit quotes a decision of a New York state

court. The surrounding paragraph of *McKibbon* addresses whether we should assume,

in the absence of any state-court decisions on the matter, that a statutory prohibition

on offers to sell applies only to offers made with the intent to sell. We wrote:

> The Government argues that there is no Colorado Supreme Court
> case expressly addressing a conviction under Colo. Rev. Stat. § 18-18-
> 405(1)(a) for a fraudulent or non-bona fide offer to sell controlled
> substances. But that was true, as well, of the Kansas law addressed in
> *Madkins*, yet this Court interpreted an "offer" for sale under Kansas law to
> include fraudulent offers made without the intent required in § 4B1.2(b),
> even in the absence of a state case recognizing such a conviction. *See* 866
> F.3d at 1147-48; *see also United States v. Bryant*, 571 F.3d 147, 156-58
> (1st Cir. 2009) (holding New York offense of offering to sell a controlled
> substance fell within U.S.S.G. § 4B1.2(b) because "it is well-established
> under New York law that in order to support a conviction under an offering
> for sale theory, there must be evidence of a bona fide offer to sell—i.e., that
> defendant had both the intent and ability to proceed with the sale"
> (emphasis added) (internal quotation marks omitted)); *United States v.
> Savage*, 542 F.3d 959, 965-66 (2d Cir. 2008) (interpreting Connecticut
> statute criminalizing offers to include fraudulent offers without citing
> supporting state case).

*McKibbon*, 878 F.3d at 973.

The citation to *Bryant* was to show that it is not an impossible burden to insist

that the government provide a state-court decision imposing an intent requirement on

a prohibition of offers to sell. In *Bryant* the defendant argued that his conviction

under a New York drug statute that prohibited offers to sell was not a controlled-

substance offense. He relied on the proposition in *Savage* that an offer to sell made

13

without the intent to distribute or sell the drug would not be a controlled-substance offense under the guidelines. *See Bryant*, 571 F.3d at 157. The First Circuit rejected the argument because the New York statute in fact required such intent. It wrote: "[I]t is well-established under New York law that 'in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell—i.e., that defendant had both the intent and ability to proceed with the sale.'" *Id.* at 158 (internal quotation marks omitted). Thus, it concluded, "At the time Bryant was allegedly convicted of the offense, he would have been found to have *intent* to proceed with a sale." *Id.*

*Bryant* was not adopting the definition of *bona fide offer* used by the New York courts. All that mattered for the First Circuit's purposes was that New York law explicitly required an intent to sell. Defendant would have us believe that by including quoted language in a parenthetical that was broader than necessary to make the quoting court's point (*McKibbon* did not underline the "ability to proceed with the sale" language, but rather underlined the phrase "it is well-established under New York law"—to show that some States do clearly require intent) this court in *McKibbon* adopted a meaning of bona fide that is a significant departure from common usage. We reject the proposition as fanciful.

To be sure, attempt requires more than intent. *McKibbon* quoted *Madkins* for the proposition that "an attempt to commit a crime requires the *intent* to commit the crime and *overt acts* in furtherance of that intent." *McKibbon*, 878 F.3d at 973 (internal quotation marks omitted). Before assessing whether the Utah offer-to-sell

14

statute is an attempt statute, we should therefore add a few words about the overt-act requirement.

In the attempt context we have said that whether conduct qualifies as an overt act (or, using the more common terminology, qualifies as a substantial step toward committing the offense[6]) "necessarily depends on the facts of each case." *United States v. Ramirez*, 348 F.3d 1175, 1180 (10th Cir. 2003) (internal quotation marks omitted). In assessing whether conduct constitutes a substantial step, we must keep in focus that "[t]he primary purpose in punishing attempts is . . . to subject to corrective action those individuals who have sufficiently manifested their dangerousness." 2 Wayne LaFave, *Substantive Criminal Law* § 11.2, at 285 (3d ed. 2018).

One could reasonably take the position that an offer to sell is always a satisfactory overt act or substantial step. This court has certainly suggested as much. *See Almanza-Vigil*, 912 F.3d at 1320 (in the attempt context, referring to an offer as an overt act); *see also United States v. Evans*, 699 F.3d 858, 868 (6th Cir. 2012),

---

[6] When it said that attempt requires intent and overt acts, *Madkins* was quoting *Taylor*, 413 F.3d at 1155, which said, "In our circuit, a conspiracy or an attempt to commit a crime requires the intent to commit the crime and overt acts in furtherance of that intent." The use of the term *overt act* fit neatly in a sentence also addressing the crime of conspiracy, which traditionally requires an overt act. But the authority that *Taylor* cited, *United States v. Haynes*, 372 F.3d 1164, 1167 (10th Cir. 2004), which addressed attempt but not conspiracy, spoke in terms of substantial steps, without any reference to overt acts. Indeed, the necessary actus reus for attempt "has been described as an overt act that *constitutes a substantial step toward completing the offense.*" *See United States v. Irving*, 665 F.3d 1184, 1197 n.14 (10th Cir. 2011) (internal quotation marks omitted). For attempt crimes our caselaw refers to this simply as a *substantial step* requirement. *See id.* at 1198 n.14 (noting that an added benefit of this nomenclature is clearly distinguishing between attempt and conspiracy, where the overt act need not be substantial).

*abrogated on other grounds by United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) ("An offer to sell a controlled substance is an act perpetrated in furtherance of a sale, typically as part of the negotiation for the price and quantity, and it is therefore a substantial step in attempting to consummate a sale.").

But even if an offer to sell might in some circumstances not suffice as a substantial step, we think that situation sufficiently unlikely that it is appropriate to place the burden on the defendant to show that a conviction could be had under the state offer-to-sell statute in circumstances in which the offer was not a substantial step. Under the categorical approach, "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *accord Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). The defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193; *see, e.g.*, *United States v. Mendez*, 924 F.3d 1122, 1125–26 (10th Cir. 2019) (requiring examples of prosecution under defendant's expansive reading of state statute where neither statute on its face nor caselaw interpreting it supported defendant's interpretation); *cf. United States v. Titties*, 852 F.3d 1257, 1274 (10th Cir. 2017) (not requiring examples of actual prosecution under defendant's theory where plain text of the statute reached beyond

16

the generic definition of a violent felony). We now turn to whether the Utah offer-to-sell provision is a controlled-substance offense.

### D.    The Utah Statute

Utah Code § 58-37-8(1)(a)(ii) makes it unlawful to "knowingly and intentionally . . . distribute a controlled or counterfeit substance, or to agree, consent, offer, or arrange to distribute a controlled or counterfeit substance." In light of the interpretation of this statute by the Utah courts, we reject Defendant's arguments that it does not state a controlled-substance offense. In particular, we hold that a violation of the offer-to-sell provision is an attempt to sell.

To begin with, in a brief opinion addressing whether § 58-37-8(1)(a)(ii) was unconstitutionally vague, the Utah Supreme Court held that the statute makes clear that the "outer perimeters" of proscribed conduct requires knowledge or intent that distribution occur:

> The statute in question . . . specif[ies] that any activity leading to or resulting in the distribution for value of a controlled substance must be engaged in knowingly or with intent that such distribution would, or would be likely to, occur. Thus, any witting or intentional lending of aid in the distribution of drugs, whatever form it takes, is proscribed by the act.

*State v. Harrison*, 601 P.2d 922, 923 (Utah 1979).

The Utah Court of Appeals later elaborated on the matter. In *State v. Hester* an undercover officer drove up to a curb where the defendant was standing and asked if he had any heroin, to which the defendant replied, "only coke." 3 P.3d 725, 727 (Utah Ct. App. 2000), *abrogated on other grounds by State v. Clark*, 20 P.3d 300 (Utah Ct. App. 2001). The officer said that she wanted heroin but "if he had any

17

cocaine she had a twenty"; the defendant took her $20 bill, told her to wait, and was then arrested as he was walking away from the undercover officer. *Id.* The defendant was charged with "unlawful distribution, offering, agreeing, consenting or arranging to distribute a controlled or counterfeit substance" under § 58-37-8(1)(a)(ii). *Id.* at 728. The trial court dismissed the charge because the government failed to present evidence from which a fact finder could reasonably infer intent to distribute. *See id.* at 727. The court of appeals agreed. *See id.*

According to the court of appeals, "To make out a prima facie case under the statute, the State must show that an offer, agreement, consent, or arrangement to distribute controlled substances was made by the defendant and, whichever variation or variations it charges, that the behavior was engaged in knowingly or with intent that such distribution would, or would be likely to, occur." *Id.* at 728 (internal quotation marks omitted).[7] It further held that "[a] defendant who offers to sell drugs with no actual intent of following through is not guilty of the offense of arranging." *Id.* at 729. There, despite the defendant's verbal offer and receipt of a $20 bill, the

---

[7] The Utah Court of Appeals broadly refers to this statute as the "arranging statute." *Hester*, 3 P.3d at 729. As indicated in the above quotation, the court does not distinguish between the various means of violating the law (*i.e.*, offering, agreeing, consenting, or arranging to distribute). Thus, we are unpersuaded by an argument in Defendant's briefs that the statute is broader than the guidelines definition of controlled-substance offense because it reaches mere agreement or consent to distribute. *Hester* made clear that its interpretation of the statute applied to "whichever variation or variations" were charged under the statute. 3 P.3d at 728. As the district court concluded, "[A]ll of the alternative means set out in the statute require both an intent to distribute and an act taken in furtherance of that intent, bringing them into the definition of an attempt." R., Vol. II at 127.

court held that there was insufficient evidence to show that "the defendant acted with the knowledge or intent that his actions would result in the distribution of a controlled substance." *Id.*

The State could have shown intent, according to the court, "by producing evidence of a completed sale of cocaine to [the officer] or evidence that [defendant] took active steps to facilitate the distribution of cocaine, even if the distribution never actually occurred." *Id.* The court provided examples of active steps, with accompanying illustrative cases, including "ma[king] phone calls seeking drugs; dr[iving] around looking for drugs; comment[ing] to [the officer] on how the drugs were to be acquired; [being] seen conferring with known drug suppliers; or [being] shown to be a link in a chain of distribution." *Id.* at 729 n.6 (citations and internal quotation marks omitted). By contrast, in *Hester* the defendant did not have cocaine on him at the time, nor had he spoken to anyone after leaving the officer, and there was no indication he would "meet a supplier or otherwise actually procure cocaine or arrange for its delivery to [the officer]." *Id.* at 727.

We easily conclude that the Utah statute requires an intent to commit a controlled-substance offense.[8] In addition, we see little difference between the

---

[8] In 2007 the Fifth Circuit ruled in a brief per curiam unpublished opinion that by including mere offers to sell, the Utah law at issue here was broader than the guidelines definition of *drug trafficking offense* under USSG § 2L1.2 cmt. n.1(B)(iv) (2006), which defined such offenses to include those that "prohibit[] the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to [do any of the aforementioned]." *See United States v. Duque-Hernandez*, 227 F. App'x 326, 328 (5th Cir. 2007). The Commission thereafter amended the commentary to § 2L1.2 to

requirement in *Hester* of substantial evidence of intent and the traditional requirement in attempt law that there be proof of a substantial step in furtherance of the offense. In other words, Utah effectively requires an overt act in support of an offer to sell. It is perhaps conceivable that Utah courts might interpret the statute to permit a conviction of one who is not guilty of an attempt to commit a controlled-substance offense. But as previously stated, under the categorical approach, "find[ing] that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires . . . a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Duenas-Alvarez*, 549 U.S. at 193. Defendant has not satisfied his burden of showing such a possibility, and the Utah Court of Appeals decision in *Hester* would seem to foreclose it.[9]

We recognize that this court has held that failure to raise a "clearly meritorious [objection] under the existing [sentencing] guidelines and elementary burden-of-proof principles" constitutes ineffective assistance of counsel. *United States v. Glover*, 97 F.3d 1345, 1349 (10th Cir. 1995). But there is nothing clearly meritorious

---

explicitly include offers to sell in the definition. Defendant argues that "[b]y amending § 2L1.2 and not § 4B1.2, the Sentencing Commission has indicated a clear intent that §4B1.2 does not extend to offers to sell." Aplt. Br. at 13. We are not persuaded. A critical distinction between the two provisions is that the commentary to § 4B1.2 already included attempt crimes whereas the prior definition of drug-trafficking offenses in the § 2L1.2 commentary specified only completed offenses.

[9] We further note that insofar as Defendant is complaining about the failure of his attorney to argue that the Utah statute does not require something more than intent, such as an overt act, he is largely relying on language in our *McKibbon* opinion, which was not rendered until after Defendant's sentencing.

about this challenge to Defendant's enhancement. We therefore cannot say that it was objectively unreasonable for counsel to fail to argue that Defendant's Utah conviction did not qualify as a controlled-substance offense.

### E.    Authority of Guideline Commentary

Defendant argues that his counsel should have objected to the enhancement on the ground that the Sentencing Commission exceeded its authority when, rather than amending the § 4B1.2(b) guideline text, it used commentary to expand the definition of a controlled-substance offense to include attempt crimes.

The guidelines contain three types of content: (1) guideline provisions, (2) "policy statements regarding application of the guidelines," and (3) commentary, which "may interpret a guideline or explain how it is to be applied, suggest circumstances which may warrant departure from the guidelines, or provide background information." *Stinson v. United States*, 508 U.S. 36, 41 (1993) (ellipses, brackets, and internal quotation marks omitted); *see id.* at 46 (one way to incorporate revisions to the guidelines is via "commentary, if the guideline which the commentary interprets will bear the construction"). *Stinson* held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 38. This limitation ensures that the Sentencing Commission does not impermissibly circumvent the requirements that it comply with the notice-and-comment provisions of the Administrative Procedure Act in issuing guidelines, *see* 28 U.S.C. § 994(x), and that Congress be given notice to

21

enable it to revoke or amend proposed guidelines, *see id.* § 994(p). *See Mistretta v. United States*, 488 U.S. 361, 393–94 (1989).[10]

As we noted above, § 4B1.2(b) of the guidelines defines *controlled substance offense* as one "that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." An application note to § 4B1.2 further states that a controlled-substance offense "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such [an] offense[]." USSG § 4B1.2(b) cmt. n.1. Defendant argues that this note is inconsistent with § 4B1.2 because the guideline text itself already provides "a clear, specific definition" of a controlled-substance offense which "omits any reference to attempts or offers to sell, despite the Commission's authority to amend the guideline to include offers to sell if that was warranted." Aplt. Br. at 25.

The circuit courts are divided on the legitimacy of this application note, with a slight majority finding the guideline text and application note consistent with one another. *See, e.g.*, *United States v. Lewis*, 963 F.3d 16, 22 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2826, 210 L. Ed. 2d 945 (2021) (commentary and guideline are

---

[10] Under the Commission's Rules of Practice and Procedure, "The Commission may promulgate commentary and policy statements, and amendments thereto, without regard to the provisions of 28 U.S.C. § 994(x). Nevertheless, the Commission will endeavor to provide, to the extent practicable, comparable opportunities for public input on proposed policy statements and commentary considered in conjunction with guideline amendments." USSC, Rule of Practice and Procedure 4.3.

consistent); *United States v. Richardson*, 958 F.3d 151, 154–55 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 423 (2020) (same); *United States v. Smith*, 989 F.3d 575, 585 (7th Cir.), *cert. denied*, 142 S. Ct. 488 (2021) (same); *United States v. Vea-Gonzales*, 999 F.2d 1326, 1330 (9th Cir. 1993) (same), *overruled on other grounds by Custis v. United States*, 511 U.S. 485 (1994); *United States v. Smith*, 54 F.3d 690, 693 (11th Cir. 1995) (same). *But see United States v. Nasir*, 982 F.3d 144, 159 (3d Cir. 2020) (en banc) (the commentary is inconsistent with § 4B1.2(b) because the guideline does not enumerate inchoate offenses), *cert. denied*, 142 S. Ct. 275 (2021), *and cert. granted, judgment vacated on other grounds*, 142 S. Ct. 56 (2021); *United States v. Campbell*, 22 F.4th 438, 444 (4th Cir. 2022) (same); *United States v. Havis*, 927 F.3d 382, 386–87 (6th Cir. 2019) (en banc); *United States v. Winstead*, 890 F.3d 1082, 1091–92 (D.C. Cir. 2018).[11]

Given the prominence of the issue and this split of authority, one might say that it would be deficient performance of counsel to fail to raise the issue, at least in a circuit which had not already resolved the matter. But there was no split of authority

---

[11] After the D.C. Circuit decided *Winstead* (the first case to find the guideline text and commentary inconsistent), the Sentencing Commission proposed an amendment to the guideline text to explicitly include inchoate offenses. Although the Commission stated that its commentary was authoritative under *Stinson*, it proposed moving inchoate offenses "to the guideline itself as a new subsection (c) to alleviate any confusion and uncertainty resulting from the D.C. Circuit's decision." *USSC Notice of Proposed Amendments*, 83 Fed. Reg. 65400-01, 65413 (Dec. 20, 2018). The Sentencing Commission has not had a quorum to promulgate amendments since then. *See Guerrant v. United States*, 142 S. Ct. 640, 641 (2022) (statement of Sotomayor, J., joined by Barrett, J.) ("[T]he Sentencing Commission has not had a quorum for three full years.").

when Defendant was sentenced on October 2, 2017. No circuit had held that the commentary and the guideline were inconsistent. More important, in *United States v. Chavez*, 660 F.3d 1215, 1228 (10th Cir. 2011), this court had rejected a challenge to the legitimacy of note 1 in the commentary to USSG § 4B1.2, holding that the Sentencing Commission "acted within [its] broad grant of authority in construing attempts to commit drug crimes as controlled substance offenses for purposes of determining career offender status." Defendant states that in *Chavez* this court did not explicitly address whether the Commission had acted improperly by including attempts only in commentary, rather than by amending the language of the guideline itself. But our opinion specifically noted that commentary is not authoritative if it "violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, [the applicable] guideline." *Id.* at 1226. And we must have been considering those requirements when we wrote: "Because the commentary [to § 4B1.2] interprets controlled substance offenses as including convictions for attempted drug trafficking, and *because the commentary is authoritative*, the district court properly determined that Mr. Chavez should be classified as a career offender." *Id.* at 1228 (emphasis added). The natural reading of the opinion would be that the panel implicitly rejected the argument now made by Defendant.[12] Indeed, several other circuits have read *Chavez* as rejecting that very argument. *See, e.g.*, *Smith*, 989

---

[12] This is not to say that this implicit rejection would be precedent that would bind later panels of this court.

F.3d at 585; *Winstead*, 890 F.3d at 1091; *United States v. Walton*, 840 F. App'x 46, 47 (8th Cir.), *cert. denied*, 142 S. Ct. 163 (2021).

In light of our opinion in *Chavez* and the absence of any supporting decision by any other circuit at the time, we do not think that it was deficient performance by Defendant's counsel at sentencing to fail to raise a claim that the commentary relied on by the district court was invalid because it was inconsistent with the guideline itself. We are confident that there were scores of competent attorneys who likewise failed to raise the issue during that period of time. Defendant's claim of ineffective assistance of counsel on this ground must be rejected.

For these reasons, we find that counsel did not perform deficiently in failing to challenge either (1) the categorical fit between Utah Code § 58-37-8(1)(a)(ii) and the definition of a controlled-substance offense in USSG § 4B1.2 or (2) the Commission's authority to include attempt offenses in the definition via commentary.

## III.    CONCLUSION

We **AFFIRM** the judgment of the district court.  Appellant's motion to file an oversized brief is **GRANTED**.