**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**March 30, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

———————————————————

KEVIN A. LARSON,

    Petitioner - Appellant,

v.

SHANE STUCKER; THE ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

    Respondents - Appellees.

No. 25-1233
(D.C. No. 1:24-CV-01979-SKC)
(D. Colo.)

———————————————————

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
———————————————————

Before **BACHARACH**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
———————————————————

Kevin A. Larson, a Colorado prisoner, seeks a certificate of appealability (COA)

under 28 U.S.C. § 2253(c)(1)(A) to appeal the district court's denial of his 28 U.S.C.

§ 2254 petition for habeas corpus relief.  We deny a COA.

### I. Background

In 2014, Mr. Larson was charged with five crimes involving sexual abuse and

exploitation of a minor.  He entered a plea agreement under which he would maintain his

innocence pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), while pleading

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

guilty to one of the charged crimes. However, he later withdrew that plea, after the prosecution gave notice it would present evidence of aggravating circumstances which could increase the minimum term of his sentence. He was then convicted by a jury on all five charged crimes and sentenced to an indeterminate term of 36 years to life.

Mr. Larson appealed and the Colorado Court of Appeals (CCA) affirmed his conviction. *People v. Larson (Larson I)*, No. 17CA0774, 2018 WL 11714832 (Colo. App. Aug. 30, 2018) (unpublished). The Colorado Supreme Court denied certiorari. Mr. Larson then sought post-conviction relief, which the state district court denied. The CCA again affirmed. *People v. Larson (Larson II)*, No. 22CA1105, 2023 WL 12061341, at *1 (Colo. App. Oct. 19, 2023) (unpublished). And the Colorado Supreme Court again denied certiorari. Mr. Larson then filed a § 2254 petition. The district court denied his petition and denied a COA. He now requests a COA from this court.

## II. Legal Standards

To appeal, Mr. Larson must first obtain a COA by making "a substantial showing of the denial of a constitutional right." § 2253(c)(2). This requires him to show that "reasonable jurists could debate whether (or, for that matter, agree that) [his] petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

In addition, because the Colorado courts rejected all three of Mr. Larson's habeas claims on their merits, our evaluation of his COA application incorporates the

2

"deferential treatment of state court decisions" under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Pacheco v. Habti*, 62 F.4th 1233, 1247 (10th Cir. 2023) (internal quotation marks omitted). Mr. Larson may obtain relief only if the state courts' resolution of his claims was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

In applying this standard, "deference and reasonableness are our watchwords." *Meek v. Martin*, 74 F.4th 1223, 1248 (10th Cir. 2023). We must "give the benefit of the doubt" to the state courts' merits decisions. *Klein v. Martin*, 146 S. Ct. 589, 596 (2026) (internal quotation marks omitted). To obtain § 2254 relief, Mr. Larson "must show far more than clear error"; he "must instead establish that the state court blundered so badly that every fairminded jurist would disagree with the decision." *Id.* (brackets and internal quotation marks omitted).[1]

### III. Discussion

#### A. Claim One—Exclusion of Alternate Suspect Evidence

Before trial, Mr. Larson sought to introduce evidence to show three former boyfriends of the victim's mother could also have committed the crimes. The trial court

---

[1] We liberally construe Mr. Larson's pro se filings but do not act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

excluded this proffered evidence as irrelevant. Mr. Larson argues its evidentiary ruling violated his right to present a complete defense.

The CCA rejected this claim on its merits.[2] It reasoned Mr. Larson's proffered evidence showing that the other men "lavished gifts and attention on the victim" and she "acted out around" one of them provides only circumstantial evidence they "might have had a motive or opportunity to commit sexual crimes" and is "insufficient to create a non-speculative connection" to the crimes for which Mr. Larson was convicted. *Larson I*, 2018 WL 11714832, at *3. As to evidence the other men were previously charged with sexual offenses against the victim and another child, the CCA concluded that absent a showing of similarity to the crimes Mr. Larson was accused of, the prior conduct and charges "[did] not give rise to a non-speculative connection between an alternate suspect and the crimes charged in [Mr. Larson's] case." *Id.*

The district court concluded the CCA's decision was reasonable. It recognized the Supreme Court has held that evidence related to alternate suspects "'may be excluded where it does not sufficiently connect the other person to the crime, as for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial.'" R. at 418 (quoting *Holmes v. South*

---

[2] Mr. Larson argues for a COA based on an apparent non-substantive typographical or scrivener's error in the district court's order, which incorrectly stated "[t]he CCA concluded that the trial court *did* abuse its discretion." R. at 414 (emphasis added). This provides no basis for relief. The district court went on to quote in full the CCA's reasoning for affirming the trial court's ruling, including the statement "[the CCA] cannot conclude that the trial court abused its discretion." *Id.* at 416 (quoting *Larson I*, 2018 WL 11714832, at *3).

*Carolina*, 547 U.S. 319, 327 (2006)).  It agreed with the CCA that Mr. Larson's proffered

evidence was speculative, concluding "[a]t most, [it] tends to show that, in addition to

Mr. Larson, other men might [also] have sexually abused the victim.  That does not mean

Mr. Larson didn't commit the crimes for which he was tried and convicted."  R. at 418.

Reasonable jurists would not debate that ruling.  Mr. Larson does not identify a

Supreme Court holding the CCA unreasonably applied.  *See Martinez v. Quick*, 134 F.4th

1046, 1056 (10th Cir.) ("In reviewing under § 2254(d)(1), we must first determine the

relevant clearly established law, which comes exclusively from the holdings of the

Supreme Court, not its dicta." (internal quotation marks omitted)), *cert. denied*, 146 S. Ct.

385 (2025).  Arguing the evidence should have been admitted, he relies on the Colorado

Rules of Evidence and Colorado court cases.  This could at most show the CCA

erroneously applied Colorado law.  But Mr. Larson cannot obtain federal habeas relief

based on a violation of state law.  *See* § 2254(d)(1); *Davis v. Workman*, 695 F.3d 1060,

1078 (10th Cir. 2012) ("[E]ven if the state rule[s] [were] violated, [a habeas petitioner]

cannot obtain relief on that ground under § 2254, which limits review to claims based on

federal law.").  And the very broad statements he cites discussing a defendant's right to

present a defense cannot support relief under § 2254(d)(1).  *See Martinez*, 134 F.4th

at 1064 ("[H]oldings that speak only at a high level of generality do not supply clearly

established federal law under AEDPA." (internal quotation marks omitted)).[3]

---

[3] Mr. Larson argues the district court erred by stating he had not "explain[ed] how the alternate suspect evidence would support his defense against the crime charged," because he contends his briefing on direct appeal and in state post-conviction proceedings had explained in detail how this evidence tends to show his innocence.  Aplt. Opening Br.

### B.  Claim Two—Right to Confront Victim's Mother

The trial court allowed the victim's mother to invoke her Fifth Amendment privilege.  It held hearings which established that federal officials wanted her to be prosecuted based on information discovered in the investigation of Mr. Larson.  The trial court concluded her testimony could "lead to some type of pimping" or similar charges and ruled no party could call her as a witness except to ask general questions about "demographic information." *Larson I*, 2018 WL 11714832, at *4.  Mr. Larson argues its ruling violated his Sixth Amendment rights to confront and question witnesses against him and prevented him from presenting exculpatory testimony.

The CCA rejected this claim, applying the rule that "before a court may compel a witness to respond . . . it must be 'perfectly clear' that the witness's answers 'cannot possibly' have a tendency to incriminate.'" *Id*. (quoting *People v. Blackwell*, 251 P.3d 468, 474 (Colo. App. 2010)).

The district court concluded the state courts had "reasonably concluded [the] Mother had a real and appreciable fear of self-incrimination were she to testify."  R. at 423.  It found the state courts' factual findings "amply supported by the record, which was carefully developed . . . over the course of two separate hearings," and that Mr. Larson had not shown the CCA's decision was contrary to or unreasonably applied any clearly established federal law.  R. at 424.  It also rejected Mr. Larson's argument

---

at 6.  However, he cannot satisfy Rule 28 of the Federal Rules of Appellate Procedure merely by incorporating or referring to arguments made in earlier proceedings.  *See Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1304 n.20 (10th Cir. 2024).

that the mother should have been required to invoke the Fifth Amendment on the witness stand in response to questions, observing this court has "'repeatedly held that neither the prosecution nor the defense may call a witness to the stand simply to compel [her] to invoke the privilege against self-incrimination.'" R. at 425 (quoting *United States v. Rivas-Macias*, 537 F.3d 1271, 1275 n.3 (10th Cir. 2008) (collecting cases)).

Reasonable jurists would not debate the district court's ruling. The CCA's decision was consistent with established federal law. *Compare Larson I*, 2018 WL 11714832, at *4 *with United States v. Chalan*, 812 F.2d 1302, 1310 (10th Cir. 1987) ("A trial judge should order the witness to answer questions only if it is '*perfectly clear*, from a careful consideration of all the circumstances in the case, that the answers *cannot possibly*' tend to incriminate the witness." (ellipsis and brackets omitted) (quoting *Hoffman v. United States*, 341 U.S. 479, 488 (1951)). Mr. Larson repeats his general contention that the trial court's ruling is unfair and violated the Sixth Amendment. But he does not identify any Supreme Court precedent that is inconsistent with the CCA's decision. Nor does he argue the state courts' factual determinations were unreasonable.

## C. Claim Three—Ineffective Assistance of Counsel

In his third habeas claim, Mr. Larson argues he received ineffective assistance of counsel when he chose to withdraw from the plea agreement.

Some background on applicable sentencing law is needed to understand this claim. Under the plea agreement, Mr. Larson pled guilty to the class 4 felony of internet sexual exploitation of a child. That crime is defined as a "sex offense," for which Colorado law requires imposition of a "'an indeterminate term'" in correctional custody. *Larson II*,

7

2023 WL 12061341, at *3 (quoting Colo. Rev. Stat. § 18-1.3-1004(1)(a)). The length of the indeterminate term must be "at least the minimum of the presumptive range" set by statute. The maximum length is "the [defendant's] natural life." *Id.*

As indicated in the plea agreement, Mr. Larson's presumptive sentencing range—which would establish the minimum length of his indeterminate prison term—would have been two to six years. However, the prosecution gave notice it intended to present evidence of extraordinary aggravating circumstances. If the sentencing court found such circumstances, it could increase the minimum length of the sentence, up to twice the high end of the presumptive range, or twelve years. *See id.* (citing Colo. Rev. Stat. § 18-1.3-401(6) and *Vensor v. People*, 151 P.3d 1274, 1279 (Colo. 2007)).

Mr. Larson's ineffective assistance claim is predicated on *Alleyne v. United States*, 570 U.S. 99, 116 (2013), which held that under the Sixth Amendment "facts that increase mandatory minimum sentences must be submitted to the jury." Mr. Larson argues *Alleyne* would have made it unconstitutional for the sentencing court to increase the minimum length of the sentence contemplated in his plea agreement based on a judicial fact-finding of aggravating circumstances. He therefore argues his plea counsel was constitutionally ineffective because she did not advise him he could have maintained the guilty plea but objected under *Alleyne* to any increase of the minimum length of his sentence. If plea counsel had so advised him, he argues, he would not have withdrawn from the plea agreement and would have received a sentence much shorter than was imposed after he was convicted on all charges.

8

The CCA rejected this claim on post-conviction appeal, holding plea counsel was not ineffective. *See Larson II*, 2023 WL 12061341, at *4. It observed the Colorado Supreme Court had upheld the constitutionality of the procedure for increasing the minimum length of an indeterminate sentence in *Vensor*. *See id.*; *Vensor*, 151 P.3d at 1280 (holding that because an indeterminate sentence "must include a maximum sentence equal to . . . the offender's natural life, the lower term . . . whether or not it is beyond the presumptive range . . . cannot constitutionally entitle [a defendant] to a jury determination" of aggravating circumstances). And the CCA observed "no court had held that *Vensor* was no longer good law" at the time Mr. Larson withdrew his plea. *Larson II*, 2023 WL 12061341, at *4. It therefore concluded that objecting to sentencing based on *Alleyne* (and contrary to *Vensor*), would have been "a novel claim." *Id.* Applying a rule that "[i]n the *Strickland* context, attorneys are not required to anticipate changes in otherwise dispositive authority in the controlling jurisdiction," the CCA concluded plea counsel had not been ineffective for "failing to advise [Mr. Larson] that they could assert a novel legal argument if they proceeded to sentencing on his guilty plea." *Id.*

The district court concluded the CCA's decision was not contrary to or an unreasonable application of any controlling federal law. It found *Alleyne* "readily distinguishable" because while *Alleyne* addressed a statutory mandatory minimum sentence, Mr. Larson's case involves "Colorado's unique indeterminate sentencing scheme for felony sex offenses" and "the applicable *range* of the lower term of years," for a sentence that would still "require[] an upper ceiling of [Mr. Larson's] natural life."

9

R. at 434.  It therefore concluded that although "the rule that Mr. Larson argues for may be a logical extension of *Alleyne* . . . . the law applicable to [his] claim was not clearly established."  R. at 434–35.

Reasonable jurists would not debate the district court's ruling.  As it recognized, *Alleyne* addressed application of a mandatory minimum sentence, 18 U.S.C. § 924(c)(1)(A)(ii), *i.e.*, a provision that increased "the floor of a sentencing range." 570 U.S. at 112.  In contrast, the sentencing provision applicable to Mr. Larson provides that a sentencing court "*may* impose a sentence . . . greater than the presumptive range," if it finds extraordinary aggravating circumstances.  Colo. Rev. Stat. § 18-1.3-401(6) (emphasis added); *see also Lopez v. People*, 113 P.3d 713, 719–20 (Colo. 2005) (stating "[s]ection 18-1.3-401(6) does not mandate a restricted or increased sentencing range based on judicial fact-finding," but gives the sentencing judge "full discretion to sentence within [a] widened range").  So reasonable jurists would not debate the district court's conclusion that *Alleyne* does not offer clearly established law for Mr. Larson's habeas claim.  *See Meek*, 74 F.4th at 1251 (recognizing that under the "threshold" inquiry of "whether there exists clearly established federal law," the court must "construe [the Supreme Court's] holdings narrowly, and will not extract clearly established law from the general legal principles developed in factually distinct contexts" (internal quotation marks omitted)).[4]

_____

[4] If Mr. Larson's habeas claim were that he was sentenced in violation of *Alleyne*, then he might have a reasonably debatable argument that *Alleyne*'s facts are sufficiently "closely-related or similar" to provide clearly established law, and that the CCA "unreasonably refuse[d] to extend[] a legal principle from [*Alleyne*] to a new context

Instead, because Mr. Larson's habeas claim is ineffective assistance of counsel, the relevant clearly established law arises from *Strickland v. Washington*, 466 U.S. 668 (1984). This requires Mr. Larson to show his "'counsel's representation fell below an objective standard of reasonableness,'" overcoming "a 'strong presumption' that [the] representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 688, 689). Our review of his claim under § 2254(d) is also "doubly deferential," *Dunn v. Reeves*, 594 U.S. 731, 738 (2021), giving "deference to both [Mr. Larson's] counsel *and* the state court," *id.* at 739. "Because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Shinn v. Kayer*, 592 U.S. 111, 119 (2020) (brackets and internal quotation marks omitted). In the habeas context, the "question is not merely whether counsel performed reasonably under *Strickland*; instead, it is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Martinez*, 134 F.4th at 1057 (brackets and internal quotation marks omitted).

Given this highly deferential review, reasonable jurists would not debate whether the CCA's decision unreasonably applied *Strickland* when concluding Mr. Larson's counsel performed reasonably by providing representation consistent with the then-

---

where it should apply." *House v. Hatch*, 527 F.3d 1010, 1017, 1018 (10th Cir. 2008) (recognizing "'extension of legal principle'" as one of "two analytic strands" of "the 'unreasonable application' prong of § 2254(d)(1)" (internal quotation marks omitted)). But his habeas claim is for ineffective assistance of counsel under *Strickland*, not for violation of *Alleyne* itself.

11

controlling holding of *Vensor*, and was not instead required to make an argument for extending *Alleyne*, or advise Mr. Larson he could do so. *Compare Larson II*, 2023 WL 12061341, at *4 (stating "counsel's performance is not deficient if [they] fail to advance novel legal theories or arguments that have merit in hindsight but are not supported by the then-existing precedent, fail to anticipate changes in the law, or fail to argue for an extension of precedent") *with United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022) (stating counsel "are not ineffective because they fail to conceive, research, and raise every novel argument that has a chance to prevail") *and Scott v. Hepp*, 62 F.4th 343, 348 (7th Cir. 2023) ("failure to object to an issue that is not settled law within [the jurisdiction] is not unreasonable [representation] by defense counsel" (brackets and internal quotation marks omitted)).

Mr. Larson maintains an argument based on *Alleyne* would not have been "novel," because *Alleyne* was decided three years before he withdrew his plea and had already been cited many times during the intervening years. Aplt. Opening Br. at 16. But he does not identify any case decided before he withdrew his plea agreement that indicated *Alleyne* had either abrogated *Vensor* or applies to Mr. Larson's sentencing.[5] So he has not shown his counsel's actions were objectively unreasonable, given the circumstances present at the time of the representation. *See Babcock*, 40 F.4th at 1177.

---

[5] Mr. Larson also has not cited any case decided more recently that has held *Alleyne* abrogated *Vensor* or makes the application of § 18-1.3-401(6) to increase the minimum length of an indeterminate sentence unconstitutional.

Mr. Larson's other arguments also do not show a COA is warranted. To the extent he claims the clearly-established law misapplied by the CCA was his general right to due process, that undeveloped argument does not show the CCA debatably misapplied clearly established law. *See Harrington*, 562 U.S. at 101 ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). He suggests his counsel should have "moved to enforce the signed plea agreement" by claiming a violation of *Alleyne*. Aplt. Opening Br. at 20. And he argues the trial court's rulings allowing him to withdraw his guilty plea and granting his request to replace plea counsel based on having been "misadvised regarding the plea agreement" show her representation was deficient. *Id.* at 21. But these arguments are still predicated on the claim that effective representation required plea counsel to provide different representation based on *Alleyne*. For the reasons discussed above, a COA is not warranted on that claim.

## D. Denial of Request to Appoint Counsel

Mr. Larson also argues the district court "[f]ailed to respond" to a motion he filed to reconsider the denial of his motion to appoint counsel. *Id.* at 25. He attached a copy of a motion to reconsider to his opening brief and COA application. That motion, dated January 24, 2025, does not appear to have been filed in the district court's docket. *See* R. at 4–5. We will construe his argument as appealing the district court's decision not to appoint counsel. He does not need a COA to appeal that ruling. *See Harbison v. Bell*, 556 U.S. 180, 194 (2009). But we review it only for an abuse of discretion. *See Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). The district court reasonably exercised its

discretion, considering factors we have held relevant to the decision whether to appoint counsel.[6] *See id.*

## IV. Conclusion

We deny a COA.  We grant Mr. Larson's second motion to proceed without prepayment of the filing fee (Dkt. No. 13) and deny his first motion (Dkt. No. 12) as moot.  We affirm the district court's denial of Mr. Larson's motion(s) to appoint counsel and otherwise dismiss this matter.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[6] The district court's January 10, 2025 order denying Mr. Larson's motion to appoint counsel was not made part of the record on appeal but we take judicial notice of its contents.  *See United States v. Richardson*, 136 F.4th 1261, 1269 n.7 (10th Cir. 2025).