**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**February 19, 2025**

**FOR THE TENTH CIRCUIT**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

No. 24-3134

CLEDALE CALDWELL,

　　Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:23-CR-40043-TC-1)**

_____

Submitted on the briefs:[*]

Melody Brannon, Federal Public Defender and Kayla Gassmann, Assistant Federal Public Defender, Kansas City, Kansas, for Defendant – Appellant.

Kate E. Brubacher, United States Attorney, and James A. Brown, Appellate Chief, Kansas City, Kansas, for Plaintiff – Appellee.

_____

Before **TYMKOVICH**, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**MATHESON**, Circuit Judge.

_____

Cledale Caldwell pled guilty for failing to register as a sex offender, a federal offense that spanned 13 months. During that time, he was convicted of and sentenced for two Oklahoma offenses. At sentencing on the failure-to-register offense, the district court assessed criminal history points for the Oklahoma offenses. Mr. Caldwell objected, arguing those offenses should have counted instead as relevant conduct, which would have produced a lower United States Sentencing Guidelines ("Guidelines") range. The district court disagreed. This dispute is now before us on appeal. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.[1]

## I.  BACKGROUND

### A. *District Court Proceedings*

In April 2024, Mr. Caldwell pled guilty to one count of failing to update his sex offender registration in violation of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). He admitted that after he relocated from Kansas to Oklahoma, he failed to update his registration between May 4, 2020, and June 6, 2021.

---

[1] The district court sentenced Mr. Caldwell under the 2023 Guidelines Manual, the version in effect at sentencing. *See* Guidelines § 1B1.11(a) (2023) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). The Guidelines we quote in this opinion are the same in the 2023 and 2024 Manuals.

2

During this time period, Mr. Caldwell also committed two state crimes in Oklahoma:

(1) On May 22, 2020, he was arrested for obstructing an officer and unlawful possession of drug paraphernalia. He was convicted and sentenced on August 11, 2020, to 12 months in jail, with a suspended sentence.

(2) On March 18, 2021, he was arrested for obstructing an officer and unlawful possession of a controlled dangerous substance. He was convicted and sentenced on March 19, 2021, to six months in jail.

Mr. Caldwell's presentence investigation report ("PSR") on the SORNA offense recommended treating each Oklahoma sentence as part of his criminal history. It assessed one criminal history point for his 2020 sentence, two points for his 2021 sentence, and one more point because Mr. Caldwell committed the SORNA offense while subject to the 2020 sentence and had seven or more points. *See* U.S.S.G. § 4A1.1(e). His total of 11 criminal history points put him in criminal history category V, which, combined with his total offense level of 10, yielded a Guidelines range of 21 to 27 months.

Mr. Caldwell objected to counting his Oklahoma sentences as criminal history, arguing they should instead have been considered as relevant conduct that occurred during the commission of his SORNA offense. Doing so, he argued, would have left him with seven criminal history points, a category IV criminal history, and a Guidelines range of 15 to 21 months.

The district court denied this objection. It said, "I think the offenses are completely unrelated, they just happen[ed] to occur while your client was on

3

release." ROA, Vol. 3 at 70. Relying on Guidelines language and Tenth Circuit cases, the court rejected Mr. Caldwell's position that the Oklahoma offenses should be counted as relevant conduct if they occurred "during" the commission of the SORNA offense (between May 4, 2020, and June 6, 2021), regardless of whether the conduct was "related to" that offense.

The district court adopted the PSR's Guidelines calculation and sentenced Mr. Caldwell to 21 months in prison. This appeal followed.

## B. *Sentencing Under § 1B1.1 Instructions*

To provide context for our discussion of the issue presented in this appeal, we briefly summarize the Sentencing Guidelines' step-by-step instructions in § 1B1.1 used to calculate the Guidelines range in Mr. Caldwell's case:

(1) "Determine . . . the offense guideline section . . . applicable to the offense of conviction."

> Section 2A3.5 applies to Mr. Caldwell's SORNA offense.

(2) "Determine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions . . . ."

> Section 2A3.5(a) sets forth three base offense levels tied to the type of the defendant's sex offense listed in SORNA. Mr. Caldwell, a Tier I offender, received a base offense level of 12.

> Section 2A3.5(b) sets forth specific offense characteristics that (1) increase the offense level if the defendant, while in "failure to register status," committed a sex offense against an adult, a sex offense against a minor, or a non-sex felony offense against a minor, and (2) decrease the offense level if the defendant voluntarily corrected the failure to register or "uncontrollable circumstances" prevented registration. Mr. Caldwell received no adjustments under § 2A3.5(b).

4

(3) "Apply the adjustments as appropriate related to victim, role, and obstruction of justice from . . . Chapter Three."

> Mr. Caldwell received no Chapter Three adjustments except acceptance of responsibility (see below).

(4) "If there are multiple counts of conviction . . . ."

> Not applicable here.

(5) "Apply the adjustment . . . for the defendant's acceptance of responsibility . . . ."

> Mr. Caldwell received a two-level downward adjustment for acceptance of responsibility under § 3E1.1(a).

(6) "Determine the defendants' criminal history category as specified in Part A of Chapter Four."

> Each qualifying prior sentence adds criminal history points under § 4A1.1. Mr. Caldwell received 4 criminal history points based on his Oklahoma sentences for a total of 11 points and a criminal history category of V.

(7) "Determine the guideline range . . . that corresponds to the offense level and criminal history category . . . ."

> The adjusted offense level of 10 and criminal history category of V yielded a Guidelines range of 21 to 27 months in prison.

(8) "[D]etermine . . . sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution."

> The district court sentenced Mr. Caldwell to 21 months in prison, to be followed by a five-year term of supervised release.

## II. **DISCUSSION**

This appeal concerns whether the Guidelines should treat Mr. Caldwell's

sentences for the Oklahoma offenses he committed during his SORNA offense as

5

criminal history or relevant conduct.[2]  Under the Guidelines, "a conviction will not be treated as a prior sentence (and no criminal history points can be added) so long as the underlying conduct meets the definition of relevant conduct." *United States v. Keifer*, 198 F.3d 798, 801 (10th Cir. 1999).  Because Mr. Caldwell's state offenses do not relate to his SORNA offense, they are not relevant conduct and were properly considered as criminal history.

## A. *Standard of Review*

We review the district court's legal interpretation of the Guidelines de novo and its factual findings for clear error.  *United States v. Brown*, 85 F.4th 1291, 1295 (10th Cir. 2023).  The parties agree that the issue presented here calls for de novo review.  Our de novo review need not be "limited to the parties' positions on what [a Guideline] means." *United States v. Tony*, 121 F.4th 56, 70 n.10 (10th Cir. 2024) (quotations omitted).

## B. *Guidelines Interpretation*

"The guidelines are interpreted as though they were a statute or court rule, with ordinary rules of statutory construction." *United States v. Thompson*, 281 F.3d 1088, 1090 (10th Cir. 2002).  We recently summarized the applicable interpretive principles:

---

[2] We have recognized failure to register under SORNA as a continuing offense.  *See United States v. Lewis*, 768 F.3d 1086, 1093 (10th Cir. 2014) ("[A] potential offense under [SORNA] extends from the moment a sex offender abandons his residence in the departure jurisdiction, until the peripatetic fugitive either registers or is arrested." (citation omitted)).

6

> Ultimately, our task in interpreting the Guidelines is to determine the intent of the Sentencing Commission.  As with general statutory interpretation, our analysis must begin with the language of the guidelines in question.  In addition to the language of the relevant Guideline itself, we also look to the interpretative and explanatory commentary to the guideline, because the intent of the Sentencing Commission is demonstrated in part through its commentary.  Guidelines commentary governs unless it runs afoul of the Constitution or a federal statute or is plainly erroneous or inconsistent with the guideline provision it interprets.  And we construe the guideline and its commentary together and seek to harmonize them.  If a harmonizing interpretation is possible, that is the proper one (so long as it does not violate the Constitution or a federal statute).

*Tony*, 121 F.4th at 62 (quotations and citations omitted).

The task is a "holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).  Thus, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (restating "cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context" (citation omitted)); *Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127, 1131 (10th Cir. 2011).[3]

---

[3] *See also* Antonin Scalia & Bryan A. Garner, *Reading Law:  The Interpretation of Legal Texts* 167 (2012) ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial

C. *Analysis*

The Guidelines' text and commentary, the purposes for relevant conduct and criminal history guidelines, and cases from this and other circuits show that relevant conduct consists of acts or omissions that occurred not only during the offense of conviction but also relate to that offense. We therefore affirm the district court's determination that Mr. Caldwell's Oklahoma offenses were not relevant conduct and should be assigned criminal history points under the Guidelines.

1. **Text, Commentary, and Structure**

We "begin with the language of the guidelines in question." *Tony*, 121 F.4th at 61 (quotations omitted). It is useful in reviewing this language to keep in mind the general Guidelines principle that "[c]onduct related to the offense of conviction is treated as an offense characteristic, whereas past criminal convictions are generally treated as an offender characteristic, and taken into account by assigning a criminal history score." *United States v. Allen*, 488 F.3d 1244, 1254 (10th Cir. 2007).

a. *Criminal history*

When the district court included the Oklahoma offenses in calculating Mr. Caldwell's criminal history category, it relied on U.S.S.G. § 4A1.1, which assigns criminal history points for "each prior sentence of imprisonment," and § 4A1.2(a)(1), which states: "The term 'prior sentence' means any sentence

---

interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense."

Although the Oklahoma offenses appear to fit squarely in this definition of "prior sentence," the commentary to § 4A1.2(a)(1) provides: "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2(a)(1) cmt. n.1. This type of conduct does not accrue criminal history points. Based on this comment, we thus must resolve the interplay between criminal history and relevant conduct in this case by determining the scope of relevant conduct under § 1B1.3(a)(1)(A). *See United States v. Torres*, 182 F.3d 1156, 1160 (10th Cir. 1999) ("A correct determination of whether the prior sentence constituted relevant conduct is an essential predicate to the criminal history assessment.").

b. *Relevant conduct*

Section 1B1.3(a) states:

Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1)  (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

(i) within the scope of the jointly undertaken criminal activity,

(ii) in furtherance of that criminal activity, and

(iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

i.  <u>Scope and common sense</u>

Mr. Caldwell argues that "acts or omissions" which happen "during the commission of the offense" are relevant conduct whether or not they relate to the offense.  Aplt. Br. at 11.  He argues that the district court's understanding of relevant conduct would be valid only if § 1B1.3(a)(1)(A) said "during and in connection with the commission of the offense" or "during and in relation to the commission of the offense." *Id.*  Under his view, any temporally-eligible conduct unrelated to the offense could be relevant conduct:  If, "during" a continuing criminal offense (e.g., conspiracy, escape, failure to register, fraud, illegal reentry), a defendant committed and was sentenced for serious but unrelated crimes (e.g., arson, murder, sexual abuse), those crimes would be deemed relevant conduct and would not be assessed any criminal

history points for sentencing on the continuing offense. As applied here,

Mr. Caldwell's Oklahoma offenses would not affect the Guidelines range at all.[4]

Mr. Caldwell focuses too narrowly on the words "during the commission of

the offense of conviction" and then interprets "relevant conduct" too broadly. In

doing so, he fails to recognize that the timing of when the conduct occurred may be

necessary but is not sufficient for the conduct to be relevant. The proper

interpretation requires more than when conduct happened to make the conduct

relevant. "Interpreting the Guidelines with a nod towards common sense," *United

States v. Brereton*, 196 F. App'x 688, 693 (10th Cir. 2006) (unpublished) (cited for

persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1), we conclude that

§ 1B1.3(a)(1)(A) concerns conduct that relates to the instant offense.[5]

---

[4] Mr. Caldwell argued below that because his second Oklahoma sentence resulted from relevant conduct, he was entitled to a six-month reduction to his sentence under U.S.S.G. § 5G1.3(b). He does not pursue this argument on appeal.

[5] *See United States v. Royer*, 895 F.2d 28, 30 (1st Cir. 1990) ("The sentencing guidelines, although uncommon in format, are rooted in common experience and common sense, and should be interpreted in that vein."); *United States v. Adames*, 901 F.2d 11, 12 (2d Cir. 1990) ("In interpreting the Sentencing Guidelines, we must consider the common sense of a particular provision, its purpose, and the consequence of proposed interpretations."); *United States v. Russell*, 564 F.3d 200, 206 (3rd Cir. 2009) ("applying the Guidelines' 'common sense approach' to interpreting § 4A1.2(c)(2)"); *United States v. Harris*, 104 F.3d 1465, 1475 (5th Cir. 1997) (applying a "common-sense interpretation of the guidelines"); *see also Roschen v. Ward*, 279 U.S. 337, 339 (1929) (Holmes, J.) ("[T]here is no canon against using common sense in construing laws as saying what they obviously mean.").

11

Section 1B1.3(a)(1)(A) sets a before, during, and after temporal boundary for relevant conduct. But within that boundary, it states that the "acts or omissions" must have "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Conduct that occurs "in preparation for that offense" and "in attempting to avoid detection or responsibility for that offense" is conduct that relates to the offense in more than simply a temporal sense. Without language to the contrary, it follows that conduct which "occurred during the commission of the offense" should be read as conduct that relates to the offense. And although "or" separates "during," "preparation," and "avoid[ing]," they all concern "the offense of conviction." The common sense reading of § 1B1.3(a)(1)(A) thus does not define relevant conduct in solely temporal terms.[6]

### ii. Relevant conduct, offense levels and characteristics, and adjustments

Section 1B1.3(a) says that relevant conduct determines "(i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three." Relevant conduct cannot be understood without accounting for

---

[6] Although "or" usually points to a disjunctive interpretation, "this canon is not inexorable, for sometimes a strict grammatical construction will frustrate legislative intent." *United States v. Moore*, 613 F.2d 1029, 1040 (D.C. Cir. 1979).

these pervasive cross-references[7] and the Guidelines' structure.[8]  Examples from

Chapter Two support our common-sense interpretation of § 1B1.3(a)(1)(A).

Throughout Chapter Two—Offense Conduct—the offense level and specific

offense characteristics for each offense turn on conduct related to the offense, not on

unrelated conduct that occurred during the offense.[9]  For example, § 2A2.3(a) sets the

base offense level for assault at "7, if the offense involved physical contact, or if a

dangerous weapon (including a firearm) was possessed and its use was threatened";

or "4, otherwise."  Similarly, under § 2A2.3(b), the specific offense characteristics

for assault turn on conduct related to the offense:  "If (A) the victim sustained bodily

injury, increase by 2 levels; or (B) the offense resulted in substantial bodily injury to

a spouse, intimate partner, or dating partner, or an individual under the age of sixteen

---

[7] A search of the Guidelines Manual reveals 103 references to "relevant conduct."

[8] The sentencing court considers relevant conduct under the applicable offense guideline in Chapter Two.  In 2000, the Sentencing Commission clarified in Amendment 591 that relevant conduct comes into play only after the court selects the offense guideline.  U.S. Sentencing Guidelines Manual, App. C (U.S. Sentencing Comm'n Supp. 2000); *see United States v. Kupfer*, 794 F.3d 1233, 1244-45 (10th Cir. 2015).

[9] Section 1B1.2(b) provides that "[a]fter determining the appropriate offense guideline . . . , determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)."

years, increase by 4 levels." As these provisions make clear, the choice of offense levels turns on conduct that is relevant to the offense.[10]

Even more telling is § 2A3.5, the offense section for Mr. Caldwell's SORNA offense. As set forth above, the offense levels stemming from the defendant's specific offense characteristics turn exclusively on conduct related to the offense "or any other information specified in the applicable guideline." U.S.S.G. § 1B1.3(a)(4). Section 2A3.5(b)(1) increases a defendant's offense level if he committed certain crimes "while in a failure to register status." Mr. Caldwell's Oklahoma offenses are not included among those crimes, and he does not identify any other adjustment that could apply based on his Oklahoma offenses, which are thus not relevant conduct under § 2A3.5.

As for Chapter Three, adjustments rely on § 1B1.3 relevant conduct to determine the "defendant's role in the offense." U.S.S.G. § 3B1.1. Conduct unrelated to the offense would not determine the "defendant's role in the offense."

### iii. Individual and joint criminal activity

Section 1B1.3(a)(1)(B) confines relevant conduct in the context of joint criminal activity to "acts and omissions of others" that fall "within the scope of," "in furtherance of," and "reasonably foreseeable in connection with that criminal

---

[10] The commentary states that § 1B1.3(a)(1)(A) "establishes a rule of construction by specifying . . . the range of conduct that is relevant to determining the applicable offense level." U.S.S.G. § 1B1.3 cmt. background.

activity." This language is consistent with reading § 1B1.3(a)(1)(A) as covering conduct that relates to the offense of conviction.

### iv. Expanded relevant conduct

Section 1B1.3(2) sheds further light on § 1B1.3(a)(1)(A)'s scope. The Sentencing Commission has described this provision as covering "expanded relevant conduct." U.S. Sent'g Comm'n, Primer on Relevant Conduct 8 (2022) ("U.S.S.G. Relevant Conduct Primer"). For offenses that require grouping of multiple counts, § 1B1.3(a)(2) states that relevant conduct includes "acts and omissions" in § 1B1.3(a)(1)(A) "that were part of the same course of conduct or common scheme or plan as the offense of conviction." The commentary says § 1B1.3(a)(2) "provides for consideration of a *broader range of conduct* [for this] class of offenses." U.S.S.G. § 1B1.3(a)(2) cmt. background (emphasis added.) It follows that § 1B1.3(a)(1)(A)'s narrower range of conduct must relate to the offense of conviction.[11]

### v. Definition of "offense"

The Guidelines define "offense" to mean "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.1 cmt. 1(I). This definition supports an understanding of "offense" to consist of conduct required to commit the offense of conviction and conduct related to that offense.

---

[11] "[W]e can presume that the interpretations of the guidelines contained in the commentary represent the most accurate indications of how the Commission deems that the guidelines should be applied to be consistent with the Guidelines Manual as a whole." *Stinson v. United States*, 508 U.S. 36, 45 (1993).

vi. Harmonizing criminal history and relevant conduct

Read in harmony, criminal history includes each "sentence previously imposed" for "conduct not part of the instant offense," U.S.S.G. § 4A1.2(a)(1), "offense" includes "all relevant conduct," *id.* § 1B1.1 cmt. 1(I), and relevant conduct includes "acts and omissions" that relate to the "offense of conviction," *id.* § 1B1.3(a)(1)(A). *See Tony*, 121 F.4th at 62 ("If a harmonizing interpretation is possible, that is the proper one . . . .").[12]

The Supreme Court drew this distinction between "[criminal history] referring simply to a defendant's *past* criminal conduct (as evidenced by convictions and prison terms), *see* U.S.S.G. § 4A1.1, and [relevant conduct] covering activity arising out of the same course of criminal conduct as the instant offense, *see* U.S.S.G. § 1B1.3." *Witte v. United States*, 515 U.S. 389, 405 (1995).

2. **Purpose of Relevant Conduct and Criminal History**

"Ultimately, our task in interpreting the Guidelines is to determine the intent of the Sentencing Commission," *Tony*, 121 F.4th at 62 (quotations omitted), which includes consideration of "the purpose of the Guideline," *United States v. Robertson*, 350 F.3d 1109, 1118 (10th Cir. 2003); *see also McCreary County v. ACLU*, 545 U.S. 844, 861 (2005) ("Examination of purpose is a staple of statutory interpretation that makes up the daily fare of every appellate court in the country . . . ."); *United States*

---

[12] *See also* William N. Eskridge, Jr., *Interpreting Law – A Primer on How to Read Statutes and the Constitution* 138 (2016) (emphasizing the importance of harmonizing in statutory interpretation).

*v. Blake*, 59 F.3d 138, 140 (10th Cir. 1995). The purposes behind the relevant conduct and criminal history Guidelines validate our textual analysis.

The purpose of relevant conduct is to enable the sentencing court to consider all "offense characteristics"—that is, the Guidelines seek to identify "the *real conduct* that underlines the crime of conviction," *United States v. Booker*, 543 U.S. 220, 250 (2005), so the defendant may "be held accountable" for those acts, U.S.S.G. § 1B1.3 cmt. n.1, as "part of the instant offense," *id.* § 4A1.2 cmt. n.1.[13] *See also* U.S.S.G. ch. 1, pt. A, subpt. 1(4)(a) (explaining the Guidelines' inclusion of "real offense elements"); *United States v. Cruz-Gramajo*, 570 F.3d 1162, 1170 (9th Cir. 2009) ("The purpose of § 1B1.3 . . . is to capture the real offense behavior involved in the defendant's conduct." (quotations omitted)). Relevant conduct therefore shapes a sentence to "account for circumstances specific to the defendant's case, such as how the crime was committed." *Rosales-Mireles v. United States*, 585 U.S. 129, 133 (2018). Section 1B1.3 allows a court "to determine the seriousness of the very crime found by the jury or admitted by the defendant." *Allen*, 488 F.3d at 1255. "If the considered conduct has nothing to do with the offense of conviction, the court is effectively sentencing a defendant for a crime that was never proved to the jury, or admitted by the defendant." *Id.*

---

[13] "The guidelines include the concept of relevant conduct in § 1B1.3 as a balance between two types of sentencing systems: 'charge offense' sentencing, which looks solely at the elements of the statute of conviction, and 'real offense' sentencing, which considers the conduct that actually occurred in connection with an offense." U.S.S.G. Relevant Conduct Primer at 1.

17

The purpose of the criminal history provisions is to enable the sentencing court to consider the defendant's "offender characteristics." *Id.* at 1254. As a general rule, "[a] defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment." U.S.S.G. ch. 4, pt. A introductory cmt. To avoid double counting, the Guidelines exclude from a defendant's criminal history score previous sentences that resulted from conduct relevant to the instant offense under § 1B1.3. *See Keifer*, 198 F.3d at 801; *Torres*, 182 F.3d at 1160. In Mr. Caldwell's view, any crime a defendant commits as an unregistered sex offender must be excluded from his criminal history score—even if the crime is unrelated to the SORNA offense. But as Mr. Caldwell's case demonstrates, this interpretation of the Guidelines would allow the "extended nature" of a SORNA offense to "shield multiple and 'severable instances of unlawful conduct' from their appropriate consequences at sentencing." *United States v. Vargas-Garcia*, 434 F.3d 345, 349 (5th Cir. 2005) (quoting *United States v. Banashefski*, 928 F.2d 349, 352 (10th Cir. 1991)).

3. **Cases**

Although this court has not addressed the specific issue presented, our cases support the interpretation of § 1B1.3(a)(1)(A) we recognize here.[14] For example, in *United States v. Altamirano-Quintero*, 511 F.3d 1087 (10th Cir. 2007), we said,

---

[14] *See* Eskridge, *Interpreting Law* 140, 163 (recognizing judicial precedents as relevant to statutory interpretation and noting judicial "reluctan[ce] to overrule or adjust them").

"Relevant conduct for sentencing purposes . . . comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct.  This relevant conduct, however, still must relate to the offense of conviction."  *Id.* at 1095 (quotations omitted); *accord United States v. Griffith*, 584 F.3d 1004, 1012 (10th Cir. 2009); *Allen*, 488 F.3d at 1255.

In *Torres*, a drug conspiracy case, we said, "To determine whether a prior offense is conduct related to the instant offense, courts generally examine several factors, including the similarity, temporal proximity, and regularity of the instant offense and the prior offense."  182 F.3d at 1160.  We identified—in addition to "time frame"—"geographic scope" and "similar[ity]" as germane to relevant conduct. *Id.* at 1161-62; *see also United States v. Finnesy*, 953 F.3d 675, 694 (10th Cir. 2020) (generally agreeing that "not every crime committed" during the commission of the continuing offense of escape from custody is relevant conduct); *United States v. Anderson*, 15 F.3d 979, 981 (10th Cir. 1994) (holding "possession and throwing away of [a] shank" were relevant conduct to the offense of "knowingly resisting, opposing, impeding and interfering" with an officer performing his official duties because the acts occurred "during the commission of the offense; they were part of the process of disobeying the officer").

In *United States v. Wilson*, 416 F.3d 1164 (10th Cir. 2005), the defendant pled guilty to mail fraud.  *Id.* at 1167.  During that 14-month offense, he was convicted and given a deferred one-year sentence for a state firearm offense.  *Id.*  The district court assessed criminal history points for the state offense under § 4A1.1.  *Id.*  On

19

appeal, the defendant argued the firearm offense should have been treated as relevant conduct because it occurred while his scheme to defraud was ongoing. *Id.* at 1167-68. We said the issue was "whether [the defendant's] prior offense was related to the instant offense," which "is a question of fact, and the government bears the burden of proving the prior offense is not relevant conduct." *Id.* at 1168. We held the district court's failure to make that determination was harmless error. *Id.* at 1168-69.[15]

Other circuits support our interpretation. As the Second Circuit put it, "The words 'relevant conduct' suggest [that] more is required than mere temporal proximity, as the other conduct must be 'relevant' and it must occur 'during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.'" *United States v. Ahders*, 622 F.3d 115, 122 (2d Cir. 2010). And it further explained, "One criminal act does not become 'relevant' to a second act under the Guidelines by the bare fact of temporal overlap." *United States v. Wernick*, 691 F.3d 108, 115 (2d Cir. 2012).[16]

---

[15] Here, the district court said the Oklahoma offenses and the SORNA offense were "completely unrelated." ROA, Vol. 3 at 70. Mr. Caldwell does not dispute this finding on appeal.

[16] *Wernick* gave this example:

> But if a bank executive is engaged in embezzling money from her company from February to September, and she assaults a coworker at an office party in July, this does not become "relevant" to raise the offense level of the

The Seventh Circuit has explained, "Despite its broad scope, [§ 1B1.3(a)(1)(A)] does not authorize the sentencing court to sweep in uncharged, wholly unrelated criminality that occurred contemporaneously with the charged conduct." *United States v. Jones*, 635 F.3d 909, 918 (7th Cir. 2011) (quotations omitted). And in *United States v. Hopson*, 18 F.3d 465 (7th Cir. 1994), the Seventh Circuit further said, "[W]e are not willing to conclude that two offenses are related merely because they occurred during the same time period and involved the same substance." *Id.* at 469.

In the Ninth Circuit's *Cruz-Gramajo* case, the defendants challenged their sentences for illegal reentry, arguing the sentencing court should have considered the offenses they committed during the illegal reentry continuing offense—burglary, driving under the influence, and evading police—as relevant conduct rather than criminal history. 570 F.3d at 1164, 1168. They argued that because these offenses occurred "during" their illegal reentries "as a temporal matter," "this temporal relationship is sufficient to deem the state offenses 'relevant conduct'" rather than "criminal history." *Id*. at 1168-69. The court rejected this argument: "Defendants' reliance on a mere temporal link to require the district court to consider the state law

> embezzlement merely because it occurred "during" the same period of time as the embezzlement. Without proof of a *connection* between the acts, the second event is literally a coincidence.

691 F.3d at 115.

21

sentences relevant conduct, and therefore not prior criminal history, is insufficient." *Id.* at 1172.[17] *See also United States v. Vizcaino*, 202 F.3d 345, 347 (D.C. Cir. 2000) (referring to relevant conduct as "conduct different from but related to an offense of conviction").

Mr. Caldwell relies on *United States v. Ressam*, 553 U.S. 272 (2008). There, the defendant was convicted of (1) making a false statement to a customs official under 18 U.S.C. § 1001 and (2) "carrying an explosive 'during the commission of' that felony" under 18 U.S.C. § 844(h)(2). *Id.* at 273. The Ninth Circuit set aside the second conviction because it read "during" to require the explosives to be carried "in relation to" the underlying felony. *Id.* The Supreme Court reversed, stating that the word "during" "denotes a temporal link" between the false statement felony and the explosives, *id.* at 274-75, and noting that when Congress amended § 844(h) to delete "unlawfully" from "carries an explosive unlawfully during the commission of any felony," it chose not to replace it with "in relation to," *id.* at 276-77.

Although *Ressam* interprets the phrase "during the commission of," any similarity with this case ends there. The object of that phrase in § 844(h)(2) is "any felony," whereas its object in § 1B1.3(a)(1)(A) is "the offense of conviction" followed by the "preparation for" and "attempting to avoid" clauses. In *Ressam*,

---

[17] The Ninth Circuit in *Cruz-Gramajo* explained: "Section 1B1.3 does not create a scope of relevant conduct that has independent significance. Rather it merely defines the scope of conduct considered in determining the base offense level, specific offense characteristics, cross references, and adjustments involved." 570 F.3d at 1172 (citing U.S.S.G. § 1B1.3 cmt. background).

legislative history supported the "temporal link," 553 U.S. at 276-77, whereas the Guidelines history shows a decision to sentence in part based on "real offense" behavior, U.S.S.G. ch. 1, pt. A, subpt. 1(4)(a). And unlike this case, *Ressam* did not concern the role that relevant conduct plays under the Guidelines, the context surrounding § 1B1.3(a)(1)(A), or anything approaching the interplay between criminal history and relevant conduct.[18]

As we have explained, temporal overlap between conduct and the offense of conviction alone may be necessary for the conduct to be relevant, but more is needed for the conduct to qualify as relevant conduct. Here, the conduct—the Oklahoma offenses—must relate to Mr. Caldwell's failure to register under SORNA to be relevant conduct.[19]

---

[18] Mr. Caldwell's reliance on *United States v. Chambers*, 268 F. App'x 707 (10th Cir. 2008) (unpublished), is misplaced. In *Chambers,* the defendant objected to the sentencing court's enhancing his base offense level under § 3B1.5(2)(B), which applies when the defendant "used body armor during the commission of the offense." *Id.* at 712. He argued "the enhancement only applies if the body armor is worn in relation to or connection with the drug offense." *Id.*

We disagreed because "[t]he Guidelines commentary defines 'use' as the 'active employment in a manner to protect the [defendant] from gunfire,' which does not suggest an implicit limitation that the body armor must be used in connection with the drug trafficking offense." *Id.* (quoting U.S.S.G. § 3B1.5 cmt. n.1)

*Chambers* thus interpreted § 3B1.5(2)(B) and its commentary regarding the word "used." The court did not interpret § 1B1.3(a)(1)(A), and its consideration of the body armor was consistent with § 1B1.3(a)(4), which provides for an offense level to be determined according to "information specified in the applicable guideline."

[19] Because we find no grievous or unresolvable ambiguity, we decline Mr. Caldwell's invitation to apply his interpretation under the rule of lenity. *See*

\*    \*    \*    \*

In summary, based on the text, commentary, structure, and purpose of the pertinent Guidelines, and also the weight of relevant case law, we hold that the district court properly considered as criminal history Mr. Caldwell's sentences for the two Oklahoma offenses he committed during the time he failed to register as a sex offender under SORNA.

## III. **CONCLUSION**

We affirm Mr. Caldwell's sentence.[20]

---

*Tony*, 121 F.4th at 69-70 (stating lenity applies only when a Guideline has "grievous ambiguity"); *United States v. Boyd*, 721 F.3d 1259, 1263 (10th Cir. 2013) (stating lenity applies to an unresolvable Guidelines ambiguity).

[20] We deny Mr. Caldwell's motion to expedite this appeal as moot.