**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**May 12, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRANDON RICHARDSON,

    Defendant - Appellant.

No. 24-6052

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:20-CR-00122-R-1)**

_____

Shira Kieval, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Stan J. West, Assistant United States Attorney (Robert J. Troester, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **HARTZ**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

    After receiving a 182-month prison sentence in Missouri for federal firearm and drug convictions, Brandon Richardson was transported to Oklahoma to face an intervening federal charge of illegal possession of a

firearm there. He pleaded guilty to this offense, and after ruling that the Oklahoma offense was independent of the Missouri offenses, the Oklahoma district court sentenced him to the low end of the advisory guideline range, 27 months, 10 of which were ordered to be served consecutively to the Missouri sentence. On appeal, Richardson contends that the Oklahoma court abused its discretion under U.S.S.G. § 5G1.3(d) in its imposing the 10 months of consecutive prison time. He contends that the Missouri court had already punished him for the Oklahoma firearm possession (though he does not identify any specified time that the Missouri court attributed to his Oklahoma conduct). On that basis, he concludes that the Oklahoma court erred by imposing an unreasonable incremental punishment—one that partially duplicated Missouri's punishment for the same Oklahoma conduct. He also argues that the 10 months of consecutive prison time create an unwarranted sentencing disparity with the few defendants sentenced elsewhere in the nation in one proceeding under Federal Rule of Criminal Procedure 20. We disagree with both arguments. Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm the Oklahoma court's sentence.

## BACKGROUND

### I.     Factual Background

In May 2019, Missouri law-enforcement officials executed a search warrant at a motel where Richardson was staying and seized drugs and a firearm. Richardson was arrested and released pending formal charges. Three

2

months later, in August 2019, Richardson was pulled over at a traffic stop and consented to a search of his vehicle. During the search, officers found drugs in the vehicle and arrested him. It appears from the record that he was again released from custody pending charges. The following month, in October 2019, a federal grand jury in Missouri indicted Richardson on drug and firearm charges stemming from his May and August arrests.

In February 2020, six months after his most recent arrest, law-enforcement officers arrested Richardson at an Oklahoma casino on the Missouri warrant. At his Oklahoma arrest, Richardson possessed a firearm despite his status as a convicted felon. Federal authorities transported Richardson to the Western District of Missouri to face his charges there. A few months later, as Richardson remained detained in Missouri on his charges, a federal grand jury sitting in the Western District of Oklahoma indicted him for his illegal firearm possession at the Oklahoma casino. That left Oklahoma to await completion of the Missouri proceedings.

The Missouri prosecution took more than two years, in part because of COVID-related delays. But after Richardson entered guilty pleas, the Missouri district court sentenced him to 182 months of imprisonment. Federal authorities then returned Richardson to the Western District of Oklahoma to face his felon-in-possession charge. After Richardson pleaded guilty to that charge, the Oklahoma court sentenced him to 27 months of imprisonment, ordering that 10 of those months run consecutively to his Missouri sentence.

## II.    Procedural Background

### A.    The Missouri Sentencing

For Richardson's Missouri drug crimes, which carried a 10-year mandatory-minimum sentence, his presentence report (PSR) recommended an advisory sentencing range of 151 to 188 months. *See* 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). For his § 924(c) crime, his advisory guidelines range was 60 months, the statutorily required consecutive mandatory-minimum term. 18 U.S.C. § 924(c)(1)(A)(i); U.S.S.G. § 2K2.4(b).

From the resulting advisory guidelines range of 211 to 248 months, the Missouri sentencing court varied downward to 182 months—two months above the statutory mandatory-minimum sentence of 180 months. The court attributed those two months to Richardson's criminal history. The Missouri PSR memorialized this criminal history, which did not include his then-pending Oklahoma indictment for illegal firearm possession. It included only his seven state-court convictions together with his three pending state-court charges.

In fact, the PSR's sole reference to Richardson's illegal firearm possession was a single sentence in an early paragraph labeled "Offense Conduct," which stated that Richardson had possessed a firearm when arrested in February 2020, not mentioning that this had occurred in Oklahoma. Nor did anyone at the Missouri sentencing hearing mention the Oklahoma firearm possession.

4

**B.    The Oklahoma Sentencing**

When Richardson was sentenced in Oklahoma on his felon-in-possession conviction, his Missouri sentence remained undischarged. With the case in that posture, the Oklahoma district court correctly turned to U.S.S.G. § 5G1.3(d). That guideline affords district courts broad discretion in choosing whether to impose their sentences concurrently, partially concurrently, or consecutively to an undischarged sentence. The government requested a sentence within the advisory guidelines range of 27 to 33 months, with between 10 and 15 months to run consecutively to the Missouri sentence. Richardson argued for a sentence within the advisory guidelines range of 27 to 33 months, with the entire term running concurrently to the Missouri sentence.

In imposing its sentence, the Oklahoma district court noted that the Oklahoma charge for illegal firearm possession was "independent of the proceeding in Missouri" and that "there has to be some consequence to [Richardson's] possession of the weapon here in Oklahoma." R. vol. III, at 20, 24. Richardson timely appealed the judgment.

## STANDARD OF REVIEW

Richardson challenges the procedural reasonableness of his sentence. He argues that the Oklahoma district court erred by treating his Oklahoma crime as

independent of his Missouri crimes. He claims that this led the Oklahoma court to impose an unreasonable incremental sentence.[1]

Because Richardson preserved his procedural challenge in the district court, we review the procedural unreasonableness of his sentence for an abuse of discretion. *United States v. Sanchez-Leon*, 764 F.3d 1248, 1262 (10th Cir. 2014). We review de novo the district court's legal conclusions and its factual findings for clear error. *Id.* "An error of law is per se an abuse of discretion." *Id.* (internal quotation marks omitted).

## DISCUSSION

On appeal, Richardson argues that the district court abused its sentencing discretion under § 5G1.3(d) by imposing consecutive prison time that was not reasonably incremental to his Missouri sentence. *See* § 5G1.3(d) (instructing that a sentence must "achieve a reasonable punishment for the instant offense"); *id.* cmt. n.4(A) (listing factors to use in imposing a sentence that, among other goals, "achieve[s] a reasonable incremental punishment for the instant offense"). We disagree that the Oklahoma district court abused its discretion by treating the Oklahoma crime as independent of the Missouri

---

[1] Richardson also raises an unpreserved challenge to the constitutionality of 18 U.S.C. § 922(g)(1), pointing us to *United States v. Rahimi*, 602 U.S. 680 (2024). After Richardson filed his appellate briefing, our court reaffirmed the constitutionality of § 922(g)(1) after *Rahimi*. *See Vincent v. Bondi*, 127 F.4th 1263, 1265–66 (10th Cir. 2025); *see also United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (holding that § 922(g)(1) does not violate the Second Amendment).

crimes and imposing the 10 months of consecutive prison time. We start with a discussion of the two relevant § 5G1.3 subsections and then address Richardson's arguments.

## I.    Legal Background

A district court must apply U.S.S.G. § 5G1.3 when it sentences a defendant who is serving an undischarged term of imprisonment. We examine two of § 5G1.3's subsections in resolving this appeal.[2]

### A.    U.S.S.G. § 5G1.3(b)

Section 5G1.3(b) applies if the undischarged "term of imprisonment resulted from another offense that is relevant conduct to the instant offense[.]" Here, that would require that Richardson's Missouri criminal acts be relevant conduct to his Oklahoma firearm-possession charge. If that condition were met, subsection (b) would require that the Oklahoma district court impose its sentence concurrently to the remainder of the undischarged Missouri term of imprisonment. § 5G1.3(b)(2).

In the district court, Richardson argued that § 5G1.3(b) applied, but on appeal, he concedes that it does not. We agree that the Oklahoma district court correctly proceeded under the catchall provision at § 5G1.3(d).

---

[2] Section 5G1.3(a) does not apply here, because Richardson didn't commit his Oklahoma offense while serving a term of imprisonment. And § 5G1.3(c) doesn't apply, because he had no "state term of imprisonment [that was] anticipated to result from another offense that is relevant conduct to the instant offense[.]"

7

**B.     U.S.S.G. § 5G1.3(d)**

Section 5G1.3(d) provides district courts discretion to run their sentences "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." In tandem, the guideline commentary provides five factors to use to "achieve a reasonable incremental punishment for the instant offense and [to] avoid unwarranted disparity[.]"[3] § 5G1.3 cmt. n.4(A). These are the five factors:

i.     The factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));

ii.    The type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;

iii.   The time served on the undischarged sentence and the time likely to be served before release;

iv.    The fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and

v.     Any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

---

[3] Though Application Note 4(A) to § 5G1.3 says a district court "should" consider the five factors, we've held that a district court *must* consider them. *United States v. Hurlich*, 293 F.3d 1223, 1229–30 (10th Cir. 2002) (referencing subsection (c), which was subsection (d)'s predecessor); *compare* § 5G1.3(c) & cmt. n.3 (2002), *with* § 5G1.3(d) & cmt. n.4(A) (2021). In our circuit, the guideline commentary has the force of the guideline unless it "'run[s] afoul of the Constitution or a federal statute' or is 'plainly erroneous or inconsistent' with the guideline provision it interprets." *United States v. Maloid*, 71 F.4th 795, 805, 807–08, 817 (10th Cir. 2023) (alteration in original) (quoting *Stinson v. United States*, 508 U.S. 36, 47 (1993)).

*Id.* A district court must provide reasons for its sentence, but it need not "make specific findings for the factors listed in the application notes." *United States v. Hurlich*, 293 F.3d 1222, 1230 (10th Cir. 2002).

## II.    Application

Richardson makes two arguments. First, he argues that the Oklahoma district court abused its discretion by imposing an unreasonable incremental sentence. He disputes the Oklahoma court's view that his Oklahoma firearm possession was "independent of the proceeding in Missouri" and thus required "some consequence . . . here in Oklahoma." R. vol. III, at 20, 24. He surmises that the Missouri court had already punished him for his Oklahoma firearm possession. From this, he faults the Oklahoma court for imposing an incremental sentence without recognizing and crediting the prison time that he says the Missouri court had already imposed for the same Oklahoma conduct. But this argument stumbles at the gate—he fails to support his view that the Missouri court attributed any of its 182-month sentence to his Oklahoma conduct.[4] Second, he argues the Oklahoma district court created an unwarranted disparity between himself and defendants across the nation who have succeeded in having their separate prosecutions transferred and consolidated into one

---

[4] Notably, Richardson does not dispute the Oklahoma court's ability to impose a 10-month consecutive sentence if it first credited the time the Missouri court supposedly imposed for the Oklahoma conduct.

sentencing under Federal Rule of Criminal Procedure 20. We take each argument in turn.

## A.    Reasonable Incremental Punishment

Richardson takes three approaches in arguing that the Missouri district court punished him for his Oklahoma firearm possession by treating that act as § 1B1.3 relevant conduct to the Missouri drug and firearm offenses. None have merit.

### 1.    Scope of Relevant Conduct

As we understand him, Richardson argues that the Missouri court necessarily punished him for his Oklahoma firearm possession because the Missouri PSR mentioned in its "Offense Conduct" section that he had been arrested with a firearm.[5] He argues that acts included in that paragraph are "interchangeable" with § 1B1.3 relevant conduct because under Application Note 1(I) to § 1B1.1, "'[o]ffense' means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." *See* Op. Br. at 23. This misreads the guidelines. The quoted definition of "offense" does not determine which acts or omissions *are* relevant conduct—only § 1B1.3 does that—but

---

[5] All Richardson offers is this two-sentence bit from the Missouri PSR: "On February 10, 2020, Richardson was arrested by the U.S. Marshals Service pursuant to an arrest warrant issued for the instant offense. At the time of his arrest, Richardson was in possession of a loaded .22 caliber North American Arms Corporation revolver, Serial No. W61968." Supp. R. at 6 ¶ 13 (emphasis omitted).

simply acknowledges that "offense" includes relevant conduct unless otherwise stated. So though we agree that the Missouri and Oklahoma courts must sentence Richardson's offenses using relevant conduct, that includes only acts and omissions captured by § 1B1.3. And Richardson's proposed "relevant conduct"—his Oklahoma firearm possession—does not fit § 1B1.3(a)'s bill.

Richardson primarily fails in that endeavor because § 1B1.3 relevant conduct includes only acts and omissions that affect the offense level under Chapters Two and Three of the sentencing guidelines. To show why, we begin with § 1B1.3's title: "Relevant Conduct (Factors that *Determine the Guideline Range*)." § 1B1.3 (emphasis added). And the guideline text supports this too. *See* § 1B1.3(a) (providing that the four offense-level-calculation categories "shall be *determined* on the basis" of the specified acts and omissions) (emphasis added)). Finally, the guidelines commentary reinforces this principle: "Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable *in determining the applicable guideline range . . . .*" § 1B1.3 cmt. n.1 (emphasis added). So what matters is whether the conduct affects the offense level under Chapters Two and Three of the sentencing guidelines. Though other conduct may be "relevant" to whether a court imposes a sentence within or outside the advisory guideline range after consideration of the 18 U.S.C. § 3553(a) factors, that conduct is not § 1B1.3 relevant conduct.

11

Our precedent reaches this same result. In one sentence of his appellate brief, Richardson asserts that *United States v. Torres*, 182 F.3d 1156 (10th Cir. 1999), defines relevant conduct more broadly than acts or omissions "lead[ing] to an increase in the defendant's advisory guidelines range." Op. Br. at 16 (citing *Torres*, 182 F.3d at 1159–60). We acknowledge *Torres*'s observation that "[o]ther courts have approached this criminal history determination differently," that is, "without inquiring whether the sentencing court took the sentence into account in determining the total offense level."[6] 182 F.3d at 1159. But as *Torres* states it, those "other courts" independently evaluated "whether the prior sentence constituted relevant conduct based on factors such as the similarity, temporal proximity, and regularity of the indicted offense and the prior offense." *Id.* at 1159–60. Such a § 1B1.3(a)(2) inquiry addresses "expanded relevant conduct"—additional acts or omissions beyond those tied to the instant offense itself that qualify to set the offense level. *See United States v. Caldwell*, 128 F.4th 1170, 1179 (10th Cir. 2025) (describing § 1B1.3(a)(2) as covering "expanded relevant conduct" (internal quotation marks omitted)). But that does not support Richardson's view that § 1B1.3 relevant conduct includes acts that do *not* increase the total offense level.

---

[6] Offense conduct that is part of a criminal conviction that counts for criminal-history points is not eligible as § 1B1.3 relevant conduct for Chapters Two and Three guideline applications. *See Torres*, 182 F.3d at 1163 (citing U.S.S.G. § 4A1.2 cmt. n.1).

12

We further rely on our recent decision in *United States v. Caldwell*. There, we noted that § 1B1.3(a) "says that relevant conduct determines '(i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three.'" *Id.* at 1178. We stated that "[r]elevant conduct cannot be understood without accounting for these pervasive cross-references and the Guidelines' structure." *Id.* (footnote omitted). Illustrating this with the assault guideline, we examined acts that would activate increases in offense levels in these ways. *Id.* From that vantage point, we rejected the defendant's claim that "acts or omissions which happen during the commission of the offense are relevant conduct whether or not they relate to the offense." *Id.* at 1177 (internal quotation marks omitted). Along this line, we rejected the defendant's argument that drug crimes committed while he was unregistered as a sex offender should count as relevant conduct and not criminal history, because the drug conduct did not affect offense levels under Chapters Two and Three of the guidelines. *Id.* at 1173, 1177–78.

### 2. Acts While Fleeing an Offense as § 1B1.3 Relevant Conduct

As a separate way to claim that his Oklahoma firearm possession was relevant conduct to his Missouri offenses, Richardson notes that his acts count as relevant conduct if they "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to

avoid detection or responsibility for that offense[.]" § 1B1.3(a)(1). But this provides Richardson no help.

As Richardson describes it, his Oklahoma firearm possession was an act occurring while he was trying to avoid detection or responsibility for his Missouri offenses. This suffers many problems. First, Richardson's Missouri arrest shows that federal agents in that state had already *detected* him for committing his offenses—they'd arrested him for them. Second, Richardson offers no facts supporting a view that he possessed a firearm in Oklahoma to *avoid responsibility* for the Missouri offenses. At his Oklahoma arrest, Richardson submitted to arrest and told the officers that he had the firearm. Third, the Missouri district court did not find that Richardson had possessed the firearm *to avoid detection or responsibility*. Nor could it have. Even now, Richardson offers nothing showing that when he crossed into Oklahoma several weeks before his arrest there, he even had the firearm. Nor does the record reveal how much time passed from Richardson's leaving Missouri and his being found in Oklahoma.

### 3. Common Course of Conduct as § 1B1.3(a)(2) Relevant Conduct

As another way of trying to show that his Oklahoma firearm possession was relevant conduct to his Missouri offenses, Richardson in one sentence raises the possibility that he could have possessed the firearm in Oklahoma as part of a common course of conduct with his Missouri firearm possession.

14

Reply Br. at 5; *see* § 1B1.3(a)(2). This argument fails too. First, Richardson has waived this argument by failing to make it in the district court, and by failing to argue plain error on appeal. *See United States v. McBride*, 94 F.4th 1036, 1044 (10th Cir. 2024) ("The failure to argue for plain error and its application on appeal surely marks the end of the road for an argument for reversal not first presented to the district court." (cleaned up)). Second, Richardson has offered nothing to show a common course of conduct in his possession of different firearms in Missouri and Oklahoma. Third, even if Richardson could have shown a common course of conduct in possessing the firearms, he agrees that his Oklahoma firearm possession would not have increased his offense level in the Missouri case.

### 4.    Punishment under 18 U.S.C. § 3553(a)

We are uncertain whether Richardson argues that the Missouri court had punished him for his Oklahoma firearm possession under 18 U.S.C. § 3553(a) and thus the Oklahoma court's consecutive prison term was not a reasonable incremental punishment. If so, that argument must fail too. For starters, the Missouri sentence exceeded the 180-month mandatory-minimum term by two months. As mentioned, Richardson never tries to identify what portion of that two months the Missouri court supposedly attributed to his Oklahoma firearm possession. Nor could he make that showing. Neither the Missouri court nor anyone at the Missouri sentencing so much as mentioned the Oklahoma firearm possession. And the Missouri court based the two months on something else:

"[Y]ou do have some criminal history and I think it's appropriate that you go a little above the guideline, at least." Sentencing Transcript, *United States v. Richardson*, No. 6:19-CR-03135-MDH (W.D. Mo. Apr. 26, 2024), ECF No. 297, at 13.[7] The Missouri PSR's criminal-history section listed seven state convictions and three pending state charges, but not Richardson's Oklahoma firearm possession.

\* \* \*

We conclude that the Oklahoma court acted within its discretion in treating the Oklahoma offense independently from the Missouri offenses. We reject Richardson's view that the Oklahoma court somehow abused its discretion by not agreeing with his unsupported speculation that the Missouri court imposed some portion of the two months above the mandatory-minimum sentence of 180 months for his Oklahoma firearm possession.

### B.    Unwarranted Sentencing Disparities

Richardson also argues that the district court's 10-month concurrent sentence created an unwarranted sentencing disparity.[8] *See* U.S.S.G. § 5G1.3 cmt. n.4(A).

---

[7] Though not included in the record on appeal, we may take judicial notice of docket information from the district court. *See Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020).

[8] Application Note 4(A) to § 5G1.3 advises a district court to consider "[t]he factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a))[.]" Section 3584(b) directs the sentencing court to consider the

*(footnote continued)*

First, he argues that his 10-month consecutive sentence yields an unwarranted disparity with a small category of hypothetical defendants who committed federal crimes in two separate districts but received a transfer to one district for entry of guilty pleas and sentencing under Federal Rule of Criminal Procedure 20(a)(1). But here, Richardson never requested such a transfer, and so the relevant Missouri and Oklahoma U.S. Attorneys obviously never agreed to one. *See* Fed. R. Crim. P. 20(a)(2). Richardson gets nowhere by misdescribing his case's non-Rule-20 posture as resulting from "irrelevant happenstance." Op. Br. at 28.

Whatever the small population of defendants sentenced after a Rule 20 transfer, Richardson is not in it. His proper comparators as defendants are those like himself sentenced outside of Rule 20. By comparing his situation to those of Rule 20 defendants, Richardson seeks a favorable sentencing disparity from defendants like himself. Unsurprisingly, Richardson cites no case in which a defendant in his position has received sentencing relief on his theory of sentencing disparities. *See United States v. Hurst*, 94 F.4th 993, 1006 (10th Cir. 2024) (rejecting a defendant's § 3553(a)(6) unwarranted-disparity argument because the defendant failed to point to specific, comparator cases involving similarly situated defendants).

---

§ 3553(a) factors when "determining whether the terms imposed are to be ordered to run concurrently or consecutively[.]" And one of those factors is "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" § 3553(a)(6).

Second, he argues that if he had been sentenced in Oklahoma first (despite his Oklahoma conduct coming weeks after his Missouri conduct), then § 5G1.3(b) would have required the later sentencing court—Missouri in this instance—to run its prison time concurrently to Oklahoma's. But this argument requires that the Missouri court would consider his Oklahoma firearm possession as relevant conduct to the Missouri offenses—a position we have already rejected.

We conclude the district court did not create an unwarranted sentencing disparity when it sentenced Richardson to a partially concurrent sentence, so it acted within its discretion.

## CONCLUSION

We affirm.

18